PHILIP SIMON *vs.* TOWN OF NEEDHAM.

Norfolk.    May 7, 1942. — May 27, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Zoning. Municipal Corporations,* By-laws and ordinances. *Needham.*

A requirement of the zoning by-law of the town of Needham, a residential
    suburb of the city of Boston, that building lots in a single residence
    district should have an area of at least one acre, was not unreasonable
    nor invalid as applied to a tract of woodland suitable for development
    for dwellings and purchased for that purpose, although there was a
    steady demand for new houses in the town and the effect of the re-
    quirement might be to reduce the value of such tract and the profit
    to be realized from its development.
The mere fact that a town board may have recommended to a town
    meeting the passage of a certain zoning amendment, stating therefor
    a reason unsound or insufficient in law, was not ground in itself for
    invalidating the amendment.

PETITION, filed in the Land Court on August 20, 1941.

The case was heard by *Smith,* J.

*E. O. Proctor,* (*M. J. Gordon* with him,) for the petitioner.

*H. W. Hardy,* for the respondent.

RONAN, J.   This is a petition filed in the Land Court in
accordance with G. L. (Ter. Ed.) c. 240, § 14A and c. 185,
§ 1 (j½), both as inserted by St. 1934, c. 263, to determine
the validity and extent of a zoning by-law which prescribed
a minimum area of one acre for house lots in the residential
district in which the petitioner's land was located.   The
judge of the Land Court made a written decision which in-
cluded findings of fact and rulings of law.   He ordered the
petition dismissed.   The petitioner excepted to certain rul-
ings, to the refusal to give the rulings requested by him,
and to the order dismissing the petition.

Needham is a suburb of Boston located twelve miles
from the center of Boston, having an area of about eight
thousand one hundred sixty-two acres, and a population of
approximately thirteen thousand which has been steadily

increasing for the last twelve years. It is essentially a residential community with a few manufacturing plants. It has two local business centers and also a small business district containing a number of garages in the northeasterly part of the town where a main traffic route intersects one of the principal highways of the town. A branch line of a railroad having five stations serves the town as do also three bus lines.

The land now owned by the petitioner has been in a single residence district since the adoption of a zoning by-law by the town in 1925. There was no minimum house lot area for the district until 1931, when an area of seven thousand square feet was established. This area was increased in 1939 to ten thousand square feet. The by-law contains a provision authorizing the board of appeals to permit the use of a smaller lot in certain instances. This by-law was amended on July 21, 1941, by dividing the single residence zone into two districts, A and B. All the building lots in district A, which included nearly all of the south side of the town, were required to be at least an acre in area. This new district then comprised one hundred eighty-nine lots, thirty-three of them having an area of less than an acre and others having an area of many acres. The petitioner's land was located in district A.

Early in June, 1941, the petitioner entered into an agreement to purchase a triangular parcel of land, which was bounded on each side by a public highway, and contained about twenty-four and one half acres. He had a plan prepared showing the subdivision of this parcel into fifty-eight lots, varying in area from thirteen thousand five hundred to twenty-seven thousand square feet, and submitted the plan at a hearing before the planning board, which took the matter under advisement. He then recorded this plan and a later plan in the registry of deeds. The transfer of the land to him was recorded later in July, 1941. The planning board on August 19, 1941, disapproved the plan submitted to it because the lots did not comply with the by-law as amended.

The petitioner's lot is covered with a small growth of

pine, scrub oak and birches and is suitably adapted for the construction of dwellings. It is located in a stretch of rolling country side, which comprises undeveloped woodland, tillage and pasture land, except for swamp land where the land slopes down to the Charles River. The Charles River and Sabrina Lake districts are the sites of country estates, with expensive buildings and large acreages. The land in question is about three quarters of a mile distant from these districts.

There was evidence tending to show a steady demand for new homes in the town. During the four years commencing with January 1, 1937, more than four hundred fifty permits have been issued by the building inspector for the construction of dwellings. There was also evidence that the value of the petitioner's land had been diminished by reason of the requirement that the area of house lots should be at least an acre.

The issue presented for decision is whether the town had the power to prescribe this minimum area for lots in the residential district in which the petitioner's land is located.

A city or town is expressly empowered to adopt zoning ordinances or by-laws "For the purpose of promoting the health, safety, convenience, morals or welfare of its inhabitants" and to "regulate . . . the size and width of lots." G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1. Municipalities have the right to determine whether the public interests demand an exercise of the power and, if so, to select the measures that are necessary for the protection of such interests. A city or town is justified in asserting the power where the interests of the public require such action and where the means employed are reasonably necessary for the accomplishment of the purpose. The authority of the respondent town to regulate the size of house lots is not challenged, but its authority to fix the area at a minimum of an acre is assailed. We have upheld regulations establishing one-family residential districts, *Brett* v. *Building Commissioner of Brookline*, 250 Mass. 73; *Lexington* v. *Bean*, 272 Mass. 547; *Locatelli* v. *Medford*, 287 Mass. 560, and those prescribing open spaces

of certain sizes in the front, sides and rear of a dwelling. *Wood* v. *Building Commissioner of Boston*, 256 Mass. 238. *Siegemund* v. *Building Commissioner of Boston*, 259 Mass. 329. *Slack* v. *Inspector of Buildings of Wellesley*, 262 Mass. 404. See *Gorieb* v. *Fox*, 274 U. S. 603.

The physical characteristics of the district itself, considered in conjunction with those of the town, strongly indicate that the district is admirably suited for one family residences. Its nearness to Boston and other densely populated areas makes it available for residential purposes for those who desire the advantages of the quiet and beauty of rural surroundings. The evidence shows a steady demand for homes in the town, and that the development of different areas for the construction of homes has already begun and will probably continue. The establishment of a neighborhood of homes in such a way as to avoid congestion in the streets, to secure safety from fire and other dangers, to prevent overcrowding of land, to obtain adequate light, air and sunshine, and to enable it to be furnished with transportation, water, light, sewer and other public necessities, which when established would tend to improve and beautify the town and would harmonize with the natural characteristics of the locality, could be materially facilitated by a regulation that prescribed a reasonable minimum area for house lots. The area was to be determined not only in the light of present needs of the public but also with a view to the probable requirements of the public that would arise in the immediate future from the normal development of the land. The advantages enjoyed by those living in one family dwellings located upon an acre lot might be thought to exceed those possessed by persons living upon a lot of ten thousand square feet. More freedom from noise and traffic might result. The danger from fire from outside sources might be reduced. A better opportunity for rest and relaxation might be afforded. Greater facilities for children to play on the premises and not in the streets would be available. There may perhaps be more inducement for one to attempt something in the way of the cultivation of flowers, shrubs and vegetables.

There may be other advantages accruing to the occupants of the larger lots. The benefits derived by those living in such a neighborhood must be considered with the benefit that would accrue to the public generally who resided in Needham by the presence of such a neighborhood. In the four towns that adjoin Needham the minimum area restrictions for some residential lots have been fixed in one at twenty thousand square feet, in two others at forty thousand square feet, and in the fourth at an acre. Of eight other towns within a short distance from Needham, six have prescribed a minimum area of forty thousand square feet for house lots, and two others have fixed the minimum area as an acre. Such evidence is not decisive that the imposition of a restriction of an area of an acre is reasonable and proper, but it is persuasive that many other communities when faced with an apparently similar problem have determined that the public interest was best served by the adoption of a restriction in some instances identical and in others nearly identical with that imposed by the respondent town. *Crocker* v. *People's Mutual Fire Ins. Co.* 8 Cush. 79. *Cass* v. *Boston & Lowell Railroad*, 14 Allen, 448. *Maynard* v. *Buck*, 100 Mass. 40. *Hill Manuf. Co.* v. *Providence & New York Steamship Co.* 125 Mass. 292. *McMahon* v. *McHale*, 174 Mass. 320. *Corthell* v. *Great Atlantic & Pacific Tea Co.* 291 Mass. 242.

There may be a difference of opinion as to the real advantages that will accrue from the larger lots and whether they are such as to lead one to the conclusion that the adoption of the acre area will result in a real and genuine enhancement of the public interests. It seems to us that a belief that such a result may be realized in this instance is not unreasonable. It seems to be supported to some extent by what has already been decided in *Brett* v. *Building Commissioner of Brookline*, 250 Mass. 73. If the question is fairly debatable we cannot substitute our judgment for that of the citizens who voted in favor of the amendment; and, whatever our personal opinions may be as to the wisdom of the amendment, we cannot pronounce the measure invalid. *Hadacheck* v. *Los Angeles*, 239 U. S. 394. *Euclid*

v. *Ambler Realty Co.* 272 U. S. 365. *Zahn* v. *Board of Public Works*, 274 U. S. 325. *Gorieb* v. *Fox*, 274 U. S. 603. *Sproles* v. *Binford*, 286 U. S. 374. *South Carolina State Highway Department* v. *Barnwell Brothers, Inc.* 303.U. S. 177.

The by-law does not prohibit the petitioner from developing his land as a site for homes, and although the restriction as to area might not permit him to secure as much profit as he would if the by-law had not been amended, yet this factor, while entitled to consideration in passing upon the reasonableness of the amendment, does not afford sufficient ground for striking down the by-law in the absence of a showing that it goes beyond what the protection of the public interests requires. *Inspector of Buildings of Lowell* v. *Stoklosa*, 250 Mass. 52. *Spector* v. *Building Inspector of Milton*, 250 Mass. 63. *Wilbur* v. *Newton*, 302 Mass. 38. *Leahy* v. *Inspector of Buildings of New Bedford*, 308 Mass. 128.

The planning board of the town reported, at the special town meeting that adopted the amendment, recommending the passage of the amendment on the ground that the town was receiving more than $60,000 in taxes from district A, that on account of the small amount of municipal service required by the district a tax profit of nearly $50,000 or $2 on the tax rate had resulted, and that there would be a much higher tax rate if the district was developed with low cost houses. The expense that might be incurred by a town in furnishing police and fire protection, the construction and maintenance of public ways, schoolhouses, water mains and sewers and other public conveniences might be considered as an element, more or less incidentally involved, in the adoption of a zoning by-law that will promote the health, safety, convenience, morals or welfare of the inhabitants of the town without imposing any unreasonable and arbitrary burden upon the landowners. A zoning by-law cannot be adopted for the purpose of setting up a barrier against the influx of thrifty and respectable citizens who desire to live there and who are able and willing to erect homes upon lots upon which fair and reasonable restrictions have been imposed nor for the purpose of protecting the

large estates that are already located in the district. The strictly local interests of the town must yield if it appears that they are plainly in conflict with the general interests of the public at large, and in such instances the interest of "the municipality would not be allowed to stand in the way." *Euclid* v. *Ambler Realty Co.* 272 U. S. 365, 390. See *Eubank* v. *Richmond,* 226 U. S. 137, 144; *Edwards* v. *California,* 314 U. S. 160; *Salisbury Land & Improvement Co.* v. *Commonwealth,* 215 Mass. 371; *Bradley* v. *Zoning Adjustment Board of Boston,* 255 Mass. 160, 162; *Dickinson* v. *New England Power Co.* 257 Mass. 108, 112; *Tranfaglia* v. *Building Commissioner of Winchester,* 306 Mass. 495; *Isenbarth* v. *Bartnett,* 206 App. Div. (N. Y.) 546, affirmed 237 N. Y. 617; *State* v. *Stahlman,* 81 W. Va. 335. We assume in favor of the petitioner that a zoning by-law cannot be used primarily as a device to maintain a low tax rate. It does not appear that it was so used here. It cannot be assumed that the voters in following the recommendations of the board were activated by the reasons mentioned by the board. See *Duffey* v. *Hopkinton,* 236 Mass. 5; *Sheldon* v. *School Committee of Hopedale,* 276 Mass. 230. These reasons dealt with merely one phase of a subject under discussion at the town meeting. We do not know what other considerations were advanced for the passage of the amendment. The citizens of the town were undoubtedly familiar with the locality and with all the material factors involved in the necessity, character and degree of regulation that should be adopted in the public interest. The action of the voters is not to be invalidated simply because someone presented a reason that was unsound or insufficient in law to support the conclusion for which it was urged. It was said in *Attorney General* v. *Williams,* 178 Mass. 330, 335, in reference to a statute, that it was the duty of this court to sustain it if a reasonable construction shows it to be valid "even if it appeared that in the endeavors which suggested the legislation, considerations were presented to the Legislature which would not be a sufficient constitutional justification for such an enactment." *Donovan* v. *Suffolk County Apportionment Commissioners,* 225 Mass. 55, 58. *Merrill* v.

*County Commissioners of Essex,* 257 Mass. 184, 187. *Attorney General* v. *Secretary of the Commonwealth,* 306 Mass. 25, 48. *Mulford* v. *Smith,* 307 U. S. 38. *Sunshine Anthracite Coal Co.* v. *Adkins,* 310 U. S. 381. *United States* v. *Darby,* 312 U. S. 100.

The ruling dismissing the petition necessarily included an implied ruling that the by-law was valid. There was no error in refusing the rulings requested. The petitioner properly does not now contend that any rights accrued to him by filing his plans of the subdivision of the land in the registry of deeds without securing their approval by the planning board. We cannot quite pronounce the instant by-law invalid when applied to the petitioner's land in all the circumstances disclosed by this record. We make no intimation that, if the lots were required to be larger than an acre or if the circumstances were even slightly different, the same result would be reached. It will be time enough to determine that question when it is presented.

*Exceptions overruled.*