DARCY WILSON *vs.* TOWN OF SHERBORN.

Middlesex.    April 18, 1974. — April 28, 1975.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Zoning,* Validity.  *Constitutional Law,* Zoning, Police power.  *Land Court,* Appeal.

A town's zoning by-law under which the lots in a particular residential district were required to have an area of at least two acres and a frontage of 200 feet was valid as an appropriate health protection measure where the Land Court found that the town did not have a public water supply or town sewerage, necessitating wells and onsite septic systems for residential construction, and where there was established on the record a reasonable relationship between the two-acre zoning and the sewage and water conditions of the town. [238-245]

PETITION filed in the Land Court on March 25, 1970.

The case was heard by *Silverio,* J.

*Paul D. DeCenzo* for the petitioner.

*Acheson H. Callaghan, Jr.* (*Barry A. Furrow* with him) for the respondent.

GOODMAN, J.    The petitioner, the owner of about eighty acres of land in Sherborn, brought this petition in the Land Court pursuant to G. L. c. 240, § 14A, and c. 185, § 1 (j ½), to determine the validity of the provisions of Sherborn's zoning by-law requiring, for the residential district including the petitioner's land, a minimum area of two acres and a frontage of two hundred feet.[1] The judge, after hearing

---

[1] No separate issue is made of the frontage requirement by the judge or the parties. It was apparently assumed that this requirement stood

the evidence and taking two views, held the by-law valid[2];
the petitioner appeals from the decision. G. L. c. 185, § 15.
The case is here on the decision, which contains findings
of fact, and on the exhibits incorporated therein.

Parameters for our determination are *Simon* v. *Needham,*
311 Mass. 560 (1942), and *Aronson* v. *Sharon,* 346 Mass.
598 (1964). In the *Needham* case (pp. 563-564) the court
described the amenities which a town could "not unreason-
abl[y]" believe would flow from one-acre zoning, and held
that this was sufficient justification for such a restriction.
The court warned, however (pp. 565-566), "A zoning by-
law cannot be adopted for the purpose of setting up a
barrier against the influx of thrifty and respectable citizens
who desire to live there and who are able and willing to
erect homes upon lots upon which fair and reasonable
restrictions have been imposed nor for the purpose of pro-
tecting the large estates that are already located in the
district. The strictly local interests of the town must yield
if it appears that they are plainly in conflict with the gen-
eral interests of the public at large, and in such instances
the interest of 'the municipality would not be allowed to
stand in the way.' [citing] *Euclid* v. *Ambler Realty Co.*
272 U. S. 365, 390 [1926]." See *Board of Appeals of Han-
over* v. *Housing Appeals Comm. in the Dept. of Community
Affairs,* 363 Mass. 339, 383-384 (1973), quoting the fore-
going.

The court concluded with the following (p. 567): "We
cannot quite pronounce the instant by-law invalid when
applied to the petitioner's land in all the circumstances
disclosed by this record. We make no intimation that, if
the lots were required to be larger than an acre or if the

---

or fell with the acreage requirement, and we treat the case on this
footing.

[2] The provisions of the by-law at issue were adopted at a town meet-
ing on December 13, 1954, and divided the town into three residential
districts and a small business district. Minimum lot requirements for
the three residential districts were one acre, two acres, and three acres
respectively. No issue is raised as to the three-acre minimum. The
zoning by-law, prior to this amendment, had provided for a one-acre
minimum throughout the town.

circumstances were even slightly different, the same result would be reached. It will be time enough to determine that question when it is presented."

That question was presented in the *Sharon* case, in which a landowner attacked the application to his land of a minimum lot size of one hundred thousand square feet, not substantially different from the two-acre minimum in our case. The court enumerated the "advantages," as set out in the *Needham* case, of a one-acre minimum over a ten thousand square foot minimum, but pointed out (p. 604): "While initially an increase in lot size might have the effects there noted, the law of diminishing returns will set in at some point." The court thus required a more specific justification for a minimum of one hundred thousand square feet than the general amenities and advantages which were a sufficient basis for the imposition of one-acre zoning in the *Needham* case. The only justification which the town offered in the *Sharon* case (p. 604) was enhancement of "living and recreational amenities" deriving from leaving land in its natural state. The court held that in the circumstances of the case the one hundred thousand square foot minimum was not a valid exercise of the police power.

The Report of the Department of Community Affairs Relative to Proposed Changes and Additions to the Zoning Enabling Act, 1972 House Doc. No. 5009, summarizes the effect of these cases on large lot zoning ("deplored by the court in *Simon* and denounced in *Aronson*") as follows (p. 16): "[L]ocal communities ... in establishing minimum lot size requirements of larger than one acre ... are especially subject to question (per the *Simon* case) where such regulations are not directly related to police power objectives (health or safety) occasioned by local topographic or soil conditions."[3]

---

[3] The report recommended (p. 16) that the following language be included in the zoning enabling act: "A zoning ordinance or by-law may require a minimum lot size of more than one acre for single-family dwellings where adverse topographic or soil conditions would endanger the public health or safety on lots smaller than those required...."

It is, of course, true that a zoning by-law enjoys a pre-sumption that it is not in "conflict[    ] with some constitu-tional provision or the enabling statute" and will be upheld if its "reasonableness ... is fairly debatable ...." *Aronson* v. *Sharon,* 346 Mass. at 602. However, debatability in terms of generalities is not enough to justify two-acre zoning. For such justification, the town must be "able to bring forward" some "advantages" which are "tangible" and not "nebu-lous." See *122 Main St. Corp.* v. *Brockton,* 323 Mass. 646, 651 (1949). It must appear from the record that there is "a reasonable basis for the judgment of the town meeting" that there are special needs that are met by two-acre zoning. See *Turnpike Realty Co. Inc.* v. *Dedham,* 362 Mass. 221, 234 (1972), cert. den. 409 U. S. 1108 (1973).

The town, in this case, recognized this analysis and pro-duced evidence to justify the two-acre provision as an appropriate health protection measure. See *Decoulos* v. *Peabody,* 360 Mass. 428, 429-430 (1971). This justification was accepted in the decision of the Land Court, which found that the town did not have a public water supply or a town sewage system and that wells and on-site septic systems were, therefore, necessary for residential construc-tion. This, the Land Court found, created a need for "a sufficient land area to physically accommodate the septic system structural elements and the well ... a sufficient land area with a soil type that allows the septic system and the well to operate without the possibility of any eventual pollution of the well water ... some provision for additional land area in the event that the system requires repair, re-location or expansion ... [and some attention to] the pos-sible deleterious effect to the environment, in time, because of the numerous, though safely functioning sewerage and water supply systems."[4]

---

[4] Such needs have been held to justify area minima sufficiently large to cope with them. *Steel Hill Dev. Inc.* v. *Sanbornton,* 469 F. 2d 956, 960 (1st Cir. 1972) (three-acre zoning justified by District Court find-ing [not clearly wrong] that "topography and soil conditions posed severe problems of pollution, improper sewage disposal, poor drain-age ..."). *Salamar Builders Corp.* v. *Tuttle,* 29 N. Y. 2d 221, 227

Wilson v. Sherborn.

The decision of the Land Court before us on appeal was made "upon consideration . . . of all the evidence" (which is unreported); it does not purport to have been based solely on the facts found in the decision. In this posture, the scope of review is extremely limited. The findings of fact cannot be revised; and the only questions open are whether there is error of law apparent on the record and whether the subsidiary findings are, as a matter of law, consistent with the general finding (see *Holcombe* v. *Hopkins*, 314 Mass. 113, 116 [1943]; cf. *Barney & Carey Co.* v. *Milton*, 324 Mass. 440, 449 [1949]) that the two-acre minimum is "reasonably related to the promotion of the public health, safety, convenience, or welfare" or, otherwise stated, is a reasonable exercise of the police power and the authority granted in the zoning enabling statute.

The petitioner points to no specific finding that can be said to be inconsistent with the general finding that two-acre zoning bears a reasonable relationship to what (as the decision indicates) was characterized by expert witnesses to be "a rather acute sewerage problem confront[ing] the town, as yet unsolved but resulting in the denial of permits for residential septic tanks in an effort to curb pollution."[5]

(1971) (sixty thousand square feet). *Zygmont* v. *Planning & Zoning Commn. of Greenwich,* 152 Conn. 550, 553-554 (1965) (four acres). See Report of the Legislative Research Council Relative to Restricting the Zoning Power to City and County Governments, 1968 Senate Doc. No. 1133, p. 92, quoting a survey by the American Society of Planning Officials: "Soil conditions limit residential density primarily in areas without public water or sewerage. Private sewage disposal systems require a sizeable area for a drainage field, seldom less than one-half acre and much more in heavy clay. If water is supplied from private wells, even more land is needed . . . ." Contra *Concord Township Appeal,* 439 Pa. 466, 472-478 (1970) (two-acre zoning invalid; three justices dissenting). See anno. 95 A. L. R. 2d 716 (1964).

[5] From the decision it appears that both parties introduced expert testimony on the impact of the soil conditions. Also introduced and incorporated in the decision was a soil survey, "Soils and Their Interpretations for Various Land Uses: Town of Sherborn: Massachusetts," prepared by the United States Department of Agriculture Soil Conservation Service in cooperation with the Middlesex Conservation District in 1966, in which large areas of the town, including the petitioner's land, are characterized as having "severe limitation[s]" for high-density residential development with on-site sewage systems.

The petitioner's contention that the building and health codes provide the town with ample protection is not borne out by the findings in the decision. The Land Court did find that compliance with the State Sanitary Code and the Sanitary Regulations for the Town of Sherborn "protected against the possible pollution of the wells and guarded against the danger of the unsafe operation of the sewage disposal system for newly constructed homes." However, this finding relates to new construction; it must be read together with the following findings that "the larger area will increase the likelihood of locating a new area for the relocation or expansion of the system when it becomes no longer safely operable"[6] and that "[i]t is also entirely probable that with the increased residential development of the area the inadequate spacing of septic tanks in terrain such as has been described in this action may cause the effluent from the septic systems to sweep into the source of the water which supplies the well. . . . There can be no question that compliance with both the zoning and board of health provisions will aid the residents, present and prospective, in locating a reliable septic system which will afford them the protection intended for a long period of time."

We note that the findings do not specifically correlate the two-acre minimum with the sewage and pollution problems[7]; but there is nothing in the findings which is inconsistent with the need specifically for a two-acre minimum, and the necessary correlation is implied in the ultimate finding of validity. See *Murphy* v. *Crosby,* 1 Mass. App. Ct. 402, 406-407 (1973). Further, the plaintiff's brief admits that the town introduced evidence "that two-acres are

---

[6] There appears to have been a conflict in the expert testimony "as to whether a properly constructed septic system would have an indefinite life or whether, in time, failure of the system would require its relocation." The court apparently accepted the views of the town's witnesses.

[7] The findings in the decision go no further than to mention a conflict between witnesses who testified that "residential construction on one-half or one-acre lots would have no adverse effect . . . [and] others [who] have expressed contrary opinions."

needed in order to safely install an individual well and sewage disposal system."[8]

The petitioner asks us to follow *Concord Township Appeal,* 439 Pa. 466 (1970), and to invalidate the two-acre minimum as exclusionary. The court in that case rejected the justification for two-acre zoning as a means of coping with sewage difficulties over the dissent of three justices who maintained that the record in that case supported that justification. The record in this case is such that we cannot reject the justification, proffered by the town and accepted by the Land Court, that there is a reasonable relationship between the two-acre minimum and the town's sewage and water problems.[9]

The petitioner points out that the *Concord* case held (p. 471) that an "extraordinary justification" would be required for two-acre zoning; that case quotes (at 470, fn. 2) Sager, Tight Little Islands: Exclusionary Zoning, Equal Protection, and the Indigent, 21 Stan. L. Rev. 767, 791 (1969), which is concerned, as the title indicates, primarily with the effect on the poor. See also the recent case of *Southern Burlington County N.A.A.C.P.* v. *Township of Mount Laurel,* 67 N. J. 151, 180-181 (1975), invalidating a variety of zoning restrictions including a one-half-acre minimum, the restrictive effect of which, particularly on low and moderate income groups, placed "the burden, and it is a heavy one, [on] ... the municipality to establish a valid basis for its action or non-action." But see *James* v. *Valtierra,* 402 U. S. 137, 141-142 (1971), refusing to apply the same standard to the requirement for a referendum for

---

[8] We need not consider other possible justifications, such as additional fire protection, to which the decision alludes. The decision indicates that the evidence was primarily directed to the sewage and pollution problems, and there is nothing in the decision to indicate that the increase in lot size from one acre to two acres (see fn. 2) would have any appreciable effect on fire protection.

[9] In the case of *National Land & Investment Co.* v. *Easttown Township Bd. of Adjustment,* 419 Pa. 504 (1965), on which the *Concord* case relies, the town had on-site sewage but a public water system. The *Concord* case only mentions sewage difficulties.

Wilson *v.* Sherborn.

low-cost housing as it applied to the requirement for a referendum for a fair housing law; *Belle Terre* v. *Boraas,* 416 U. S. 1, 8 (1974), upholding as "reasonable" a zoning provision excluding unrelated groups from single-family dwellings.

However, we need not deal with the impact on low and moderate income groups and the standard for review where such an impact is urged[10] because it is at least minimized by the anti-snob zoning law. See G. L. c. 40B, §§ 20-23, as added by St. 1969, c. 774, in which the Legislature required that " '[t]he strictly local interests of the town' ... yield to the regional need for the construction of low and moderate income housing." *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs,* 363 Mass. 339, 385 (1973).

It is difficult to see how, in any event, two-acre zoning as contrasted with one-acre zoning, which the *Needham* case holds valid and which the petitioner advocates, would have any real effect on the housing needs of low and moderate income groups. See *Southern Burlington County N.A.A.C.P.* case, *supra,* at 182. Two-acre zoning may affect the availability of and market for housing generally, though the economic impact of large-lot zoning on higher income groups is not entirely clear. Sagalyn and Sternlieb, Zoning and Housing Costs, 66-70 (1972). Urban Land Institute, The Effect of Large Lot Size on Residential Development,

---

[10] For general discussions of these matters see Branfman, Cohen and Trubek, Measuring the Invisible Wall: Land Use Controls and the Residential Patterns of the Poor, 82 Yale L. J. 483 (1973); Michelman, The Advent of a Right to Housing: A Current Appraisal, 5 Harv. Civ. Rights–Civ. Lib. L. Rev. 207 (1970); Sager, Tight Little Islands: Exclusionary Zoning, Equal Protection, and the Indigent, 21 Stan. L. Rev. 767 (1969); Note, Exclusionary Zoning and Equal Protection, 84 Harv. L. Rev. 1645 (1971); Note, The Equal Protection Clause and Exclusionary Zoning After *Valtierra* and *Dandridge,* 81 Yale L. J. 61 (1971). See also Gunther, Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv. L. Rev. 1, 18-37 (1972); Michelman, Foreword: On Protecting the Poor Through the Fourteenth Amendment, 83 Harv. L. Rev. 7 (1969); Struve, The Less-Restrictive-Alternative Principle and Economic Due Process, 80 Harv. L. Rev. 1463 (1967); The Supreme Court, 1973 Term, 88 Harv. L. Rev. 43, 124-125 (1974).

8, 20 (Technical Bulletin No. 32, 1958).[11] Thus, it cannot be said on this record that anything more is required than the establishment of a reasonable relationship between two-acre zoning and the sewage and water conditions of the town. Such a relationship has been established on the record in this case.

Since we thus hold that the two-acre zoning in this case is within the police power, the petitioner's argument that the by-law is invalid because his property is diminished in value (which, in any event, is not borne out by the record) must fail. Even assuming such a diminution, "[t]he fact that he may not be able to put his land to its most profitable use is not sufficient reason to invalidate the zoning by-law." *Maider* v. *Dover,* 1 Mass. App. Ct. 683, 688 (1974). The town has not gone "beyond what the protection of the public interests requires." *Simon* v. *Needham,* 311 Mass. at 565. Cf. *122 Main St. Corp.* v. *Brockton,* 323 Mass. at 651. It obviously cannot be said that as a result of the town's action the land is unusable "for any reasonable purpose"; and this being so, the by-law is not confiscatory. *Commissioner of Natural Resources* v. *S. Volpe & Co. Inc.* 349 Mass. 104, 111 (1965). *Turnpike Realty Co. Inc.* v. *Dedham,* 362 Mass. 221, 236 (1972), cert. den. 409 U. S. 1108 (1973).

*Decision affirmed.*

---

[11] This publication is referred to in Report of the Legislative Research Council Relative to Restricting the Zoning Power to City and County Governments, 1968 Senate Doc. 1133, p. 102.