GEORGE MELLENDICK & others[1] *vs.* ZONING BOARD OF
APPEALS OF EDGARTOWN & others[2]
(and two companion cases[3]).

No. 07-P-107.

Suffolk. June 13, 2007. - August 24, 2007.

Present: GELINAS, DOERFER, & KAFKER, JJ.

*Zoning,* Special permit, By-law, Low and moderate income housing.

In a civil action challenging the award by a town zoning board of appeals
(board) to the individual defendants of special permits for the construction
of single-family residences on certain unimproved parcels abutting the
plaintiffs' land, pursuant to a provision of the town's zoning by-law concern-
ing affordable housing, a Land Court judge properly granted summary
judgment in favor of the defendants, where the board reasonably interpreted
its by-law, which did not require a local review of the effects of the
permits on protected species or priority habitats. [856-858]
There was no merit to the argument that the judge in a civil action erred in
denying the plaintiffs' motion to alter or amend the judgment, as the
judge's rendering of summary judgment did not unfairly surprise the
parties. [858-859]

CIVIL ACTIONS commenced in the Land Court Department on
September 6, 2005.

The cases were heard by *Gordon H. Piper*, J., on motions for
summary judgment.

*Ellen B. Kaplan* (*Kathryn E. Sullivan* with her) for the
plaintiffs.

*Ronald H. Rappaport* for zoning board of appeals of Ed-
gartown.

[1]James Williams, William O'Connell, Paul Wales, Robert Finklestein, Cheryl
Finklestein, Frank Gazarian, Karen Gazarian, Cornelia Dean, and Lionel
Spiro.

[2]Andrea Dellorusso, Luke Riordan, and Island Housing Trust Corporation.

[3]In the companion cases, the same plaintiffs brought actions against the
zoning board of appeals of Edgartown and Clinton Fisher, and against the
zoning board of appeals of Edgartown, Joe Spagnuolo, and Cheryl Herrick.

*Richard M. Bluestein* for Island Housing Trust Corporation.

KAFKER, J. The three parcels of land in question are located on Chappaquiddick Island in Edgartown (town). At issue are special permits awarded by the town's zoning board of appeals (board) to the individual defendants pursuant to a provision of the town's zoning by-law, art. XI, § 11.20 (hereinafter § 11.20), entitled "Substandard Lots as Affordable Homesites." This provision allows "homesites to be buildable for people who have lived in Edgartown for a substantial time, who intend to live year-round in Edgartown, but who, because of high land prices, would otherwise be financially unable to establish their homes in Edgartown." The plaintiffs, abutting land owners, have challenged the issuance of the special permits, contending that the homesites are not appropriate locations for the issuance of the permits because the construction of the three single-family residences — on land designated as priority habitat pursuant to G. L. c. 131A, the Massachusetts Endangered Species Act — adversely affects the neighborhood in violation of the by-law. In a decision upholding the issuance of the permits, a judge of the Land Court granted summary judgment to the defendants and denied the plaintiffs' motion for reconsideration. The plaintiffs then appealed to this court pursuant to G. L. c. 40A, § 17. We affirm.

*Background.* The individual defendants sought special permits pursuant to § 11.20 to build single-family residences on three unimproved parcels of land on Sandy Road in Chappaquiddick. Each lot measures slightly more than one acre. All are located in a residential zoning district with a three-acre minimum lot size requirement.[4] The lots are not in any of the special overlay districts or districts of critical planning concern within the town.[5]

As provided in § 11.20(3), "[t]he Zoning Board of Appeals

---

[4]When the town first adopted zoning in 1966, the minimum lot area was one acre. A number of the abutting landowners, including the plaintiffs, William O'Connell and Robert and Cheryl Finklestein, have one-acre lots. In 1973, an amendment established a three-acre minimum. See generally *Johnson v. Edgartown*, 425 Mass. 117, 118-119 (1997) (addressing challenge to three-acre zoning requirement in Edgartown by-law).

[5]Those districts are identified in the by-law in art. XIII (Beach Area and Wetlands Regulations); art. XIV (Coastal District; Island Road District;

may approve a special permit for a substandard[6] lot to be buildable in any zoning district, notwithstanding provisions in any other Article of this bylaw provided that" the requirements set out in § 11.20(3)(a)-(d) are met. As provided in § 11.20(3)(a), the applicant must meet "the residence and income requirements of the Edgartown Resident Homesite Committee, and [be] so certified by the Resident Homesite Committee, before submitting application to the Zoning Board of Appeals." It is not disputed on appeal that the individual defendants satisfied this requirement. The same is true for the requirements that the lot be a minimum of 10,000 square feet, § 11.20(3)(b), and that the minimum requirements of the town board of health for water and septage be satisfied and so certified by the board of health, § 11.20(3)(c). The only issue in dispute is whether § 11.20(3)(d), which incorporates the requirements of § 11.6(a) of the by-law, is also satisfied.

According to § 11.6(a) of the by-law, "[t]he Board shall grant such a Special Permit only if . . . the Board finds that the specific site is an appropriate location for such uses, that such uses will not adversely affect the neighborhood and that adequate and appropriate facilities and protection will be provided such as, without limiting the generality of the foregoing, parking facilities and screening of unsightly uses from public view." The board made such findings unanimously after hearings held on August 3 and 17, 2005. In so doing, the board rejected arguments that construction of three single-family residences on three one-acre lots would change the character of the neighborhood and that the twenty-foot way serving the properties was inadequate.

According to the minutes of the proceedings before the board on August 3 and August 17, the habitat issue was raised as fol-

Special Places District; Cape Pogue District; Katama Airfield; and Edgartown Ponds District); art. XVI (Planned Development District); art. XIX (Flood Plain Zone); and art. XX (Surface Water District).

[6]Section 11.20.2(2) of the by-law defines a substandard lot as "a lot which has been established and recorded in Dukes County Registry of Deeds prior to April 10, 2001 which is smaller than the required minimum lot size for a building lot in the zoning district in which it is located and which is determined to be unbuildable in accordance with the provisions of the Massachusetts General Laws and the Edgartown Zoning Bylaw (that is, not 'grandfathered' by other laws)."

lows: The attorney for the abutters "spoke about the [Natural] Heritage for Endangered Species Program. She said any application in a priority habitat must consult and make application to the state." The town conservation agent submitted a memorandum "addressing the letter submitted by [plaintiff's counsel] from the Division of Wildlife and Fisheries."[7] On August 17, 2005, the board voted unanimously to issue special permits for the three lots.

On September 21, 2005, after the permits were issued, the division of fisheries and wildlife issued a letter concerning the construction of the three single-family homes. This letter stated that the division had "reviewed this project for potential impacts to nine state-listed rare species documented to occur within Priority Habitat #1730 . . . . Based on a review of the information that was provided and the information that is currently contained in our database, the [natural heritage and endangered species program] has determined that this project, as currently proposed, will not result in a prohibited 'take' of state-listed rare species."

Contending that the special permits were improperly granted, the plaintiffs filed suit in the Land Court. The arguments related to § 11.20(d) and § 11.6(a) of the by-law focused on one issue: whether the board properly could have found that the lots were appropriate locations, and that the uses would not adversely affect the neighborhood, without considering the environmental consequences of allowing the residences to be constructed in "priority habitat" as defined under G. L. c. 131A, the Endangered Species Act. See 321 Code Mass. Regs. § 10.02 (2005). As the Land Court judge stated in his summary judgment decision, "Plaintiffs suggest that the proposed residential construction would have a negative impact on certain protected or endangered species, including certain varieties of moths, and that full study of this risk should have been undertaken by the project proponents before the Board granted the special permits."

The summary judgment record establishes that the lots are located in Priority Habitat # 1730, as designated by the divi-

---

[7]Neither the letter nor the substance of the conservation agent's memorandum have been included in the record appendix.

sion of fisheries and wildlife pursuant to G. L. c. 131A and the regulations promulgated thereunder. The record also establishes that all of Chappaquiddick Island and approximately eighty to eighty-five percent of the town have been designated priority habitats under G. L. c. 131A and the related regulations.

On June 22, 2006, the Land Court judge granted summary judgment to the defendants, and a judgment entered providing that "the decisions of the Board in these three cases are not beyond the scope of authority of the defendant members of the Board; are not arbitrary, capricious, unreasonable or contrary to law; and are not legally entitled to be annulled." The judge determined that because "consideration of [the] effect of proposed residential construction on priority habitat is not a protected interest the Board must address under Section 11.20 [of the zoning by-law], plaintiffs cannot rest their appeal on the Board's failure to have done so." On July 3, 2006, the plaintiffs filed a motion to alter or amend the judgment, contending that, in addition to the legal argument regarding the required consideration of impact on priority habitat, there were other outstanding factual issues in dispute regarding adverse effects on the neighborhood. On July 27, 2006, the judge denied the plaintiffs' motion. The plaintiffs then appealed to this court.[8]

*Consideration of impact on priority habitat.* General Laws c. 40A, § 9, as inserted by St. 1975, c. 808, § 3, provides, in relevant part, that "[s]pecial permits may be issued only for uses which are in harmony with the general purpose and intent of the ordinance or by-law, and shall be subject to general or specific provisions set forth therein." On appeal, "review of the board's decision, while based upon de novo fact finding, is nonetheless 'circumscribed. . . . [That decision] "cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary." ' " *Davis* v. *Zoning Bd. of Chatham,* 52 Mass. App. Ct. 349, 355 (2001),

---

[8]The purchase and sale agreement of the individual defendants, Herrick and Spagnuolo, expired for one of the lots and that lot was purchased on September 29, 2006, by the plaintiffs, Robert and Cheryl Finklestein. As the issues on appeal are the same for all three special permits and the Land Court judge considered the three special permits together, we decline to dismiss the appeals regarding the Herrick and Spagnuolo permit as moot as argued by the board.

quoting from *Roberts* v. *Southwestern Bell Mobile Sys., Inc.*, 429 Mass. 478, 486 (1999). As this court has repeatedly emphasized, "[t]he reasonable construction that a zoning board of appeals gives to the by-laws it is charged with implementing is entitled to deference." *Cameron* v. *DiVirgilio*, 55 Mass. App. Ct. 24, 29 (2002). See *S. Volpe & Co.* v. *Board of Appeals of Wareham*, 4 Mass. App. Ct. 357, 359-360 (1976); *Advanced Dev. Concepts, Inc.* v. *Blackstone*, 33 Mass. App. Ct. 228, 231 (1992); *Livoli* v. *Zoning Bd. of Appeals of Southborough*, 42 Mass. App. Ct. 921, 922-923 (1997). We conclude that the board reasonably interpreted its by-law in the instant case.

The plaintiffs contend that the decision of the board allowing the special permits must be reversed because the board did not interpret § 11.20 or § 11.6(a) of the by-law to require consideration of the effect of the affordable housing construction on endangered or protected species or their habitats.[9] The issue is not whether endangered or protected species or their habitats will be left unregulated. The division of fisheries and wildlife, a State agency with the necessary expertise to undertake this technical inquiry, has been expressly tasked with this responsibility by G. L. c. 131A. As previously noted, that agency also concluded that the allowance of the special permits in the instant case would not result in a prohibited "take" of protected species under the Endangered Species Act. Rather, the question presented is whether the by-law requires a local review as well. See generally *Golden* v. *Selectmen of Falmouth*, 358 Mass. 519, 523-524 (1970).

Nothing in the relevant by-law provisions expressly requires such consideration. In fact, these provisions do not even mention protected species or priority habitat issues. Their absence here is rendered more conspicuous by their required consideration elsewhere in the zoning by-law in sections addressing areas that are of particular environmental concern for the town. See *Livoli* v. *Zoning Bd. of Appeals of Southborough*, 42 Mass. App. Ct. at 922-923. For example, in art. XIV, § 14.4(4)(f)(c), of the by-law, special permits may be granted in the Cape Pogue District if the proposed use "will not have a significant adverse

---

[9]The issue of the plaintiffs' standing was not decided by the Land Court, nor has it been raised on appeal.

effect on rare or endangered species of plants or animals . . . or their habitat," and in art. XIV, § 14.5(8)(a), where the board is directed to consider "the protection of endangered plant and animal species" as a criterion for issuing special permits in the Katama Airfield and Conservation Area District.[10]

We do not interpret the general language in § 11.6(a) of the by-law, requiring the board to consider whether the sites are appropriate locations for affordable housing and whether they "adversely affect the neighborhood," to compel consideration of endangered species and priority habitat concerns. It was reasonable for the board to determine that the traditional zoning board review called for by this language did not require the specialized endangered species and habitat review requested by the plaintiffs. More specific direction in the by-law is necessary to require such specialized review.[11]

*Motion to alter or amend.* Finally, the plaintiffs argue that the Land Court judge erred when he denied their motion to alter or amend the judgment pursuant to Mass.R.Civ.P. 59(e), 365 Mass. 827 (1974). The plaintiffs claim that when the judge allowed summary judgment for the defendants on the issues raised in the cross motions for summary judgment, he unfairly surprised them, as there were other outstanding factual issues relating to § 11.20 and § 11.6(a) of the by-law that were not raised in those motions and that remained in dispute.

Our review of the record reveals that the issues were nar-

---

[10]As the Land Court judge found, the disputed lots are not located within one of the special zoning overlay districts or "Districts of Critical Planning Concern" of the town.

[11]We note that the plaintiffs did not argue to the board that it was required by the by-law to address the endangered species and priority habit issue. Instead, the plaintiffs contended only that G. L. c. 131A required the board to consult and make application to the State regarding the permits in the priority habitat area. See G. L. c. 131A, § 4 ("Local zoning boards . . . shall notify the director [of the division of fisheries and wildlife], in writing, of any and all petitions, requests or applications for permits . . ."). The plaintiffs have not, however, argued on appeal that the special permits were issued in violation of any of the provisions of G. L. c. 131A. Rather, it was only after the special permits had been issued and the State's Natural Heritage and Endangered Species Program issued a letter stating that the proposed project to construct three single-family residences would not result in a "take" pursuant to G. L. c. 131A, that the plaintiffs recast their argument using the language of the by-law.

rowed by the parties and the judge to expedite review. The clear focus of the § 11.20(3)(d) and § 11.6(a) dispute was the endangered species and priority habitat issue. The judge expressly asked the plaintiffs if other issues required factual development in discovery, and they responded no. Other key facts, including the size and number of the lots, the presence of other one-acre lots, the twenty-foot way serving the lots, and the general character of the neighborhood, were not in dispute. See generally *Walker* v. *Board of Appeals of Harwich*, 388 Mass. 42, 52-53 (1983). Furthermore, as the Land Court judge stated, the plaintiffs "have not pointed to the existence of any concrete particularized facts in dispute. . . ."

Despite ample opportunity, the plaintiffs did not preserve additional arguments presenting disputed factual issues. In sum, the parties understood, or should have understood, that decisions on the issues raised in the cross motions could dispose of the entire case. This is not a case where the parties were surprised by the judge's summary judgment decision. *Petrillo* v. *Zoning Bd. of Appeals of Cohasset*, 65 Mass. App. Ct. 453, 461 (2006).

*Judgment affirmed.*

*Order denying plaintiffs' motion to alter or amend judgment affirmed.*