MARTHA W. ZUCKERMAN vs. TOWN OF HADLEY.

Suffolk. March 2, 2004. - August 24, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Zoning,* Validity, By-law, Building permit, Limitation on rate of development. *Subdivision Control,* Limitation on rate of development. *Constitutional Law,* Witness.

This court concluded that except when used to give communities breathing room for periods reasonably necessary for the purposes of growth planning generally, or resource problem solving specifically, as determined by the specific circumstances of each case, zoning restrictions of an indefinite or unlimited duration on a municipality's rate of development, such as those of the defendant town, are in derogation of the general welfare and thus are unconstitutional. [515-521]

CIVIL ACTION commenced in the Land Court Department on July 12, 2000.

The case was heard by *Alexander H. Sands, III,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joel B. Bard (John J. Goldrosen* with him) for the defendant.

*Diane C. Tillotson (Maureen E. Curran* with her) for the plaintiff.

The following submitted briefs for amici curiae:

*John A. Pike* for Massachusetts Municipal Association.

*Thomas J. Urbelis* for The Massachusetts City Solicitors and Town Counsel Association.

*Richard J. Gallogly & Gareth I. Orsmond* for The Abstract Club & another.

*Howard P. Speicher & Benjamin Fierro, III,* for Home Builders Association of Massachusetts, Inc., & others.

CORDY, J. This case involves a landowner's challenge to the statutory and constitutional validity of a town zoning bylaw of unlimited duration that regulates the number of building permits

issued annually for the construction of single family homes. It requires us to confront more broadly the issues of duration and purpose left open in *Sturges* v. *Chilmark*, 380 Mass. 246 (1980), in which we held that a "municipality may impose reasonable time limitations on development, at least where those restrictions are temporary and adopted to provide controlled development while the municipality engages in comprehensive planning studies." *Id.* at 252-253. We now make explicit what was implied in the *Sturges* case, that, absent exceptional circumstances not present here, restrictions of unlimited duration on a municipality's rate of development are in derogation of the general welfare and thus are unconstitutional.[1]

*Background.* The facts of the case are largely set forth in the decision of the Land Court. At a special town meeting held in October, 1988, the town of Hadley (town) adopted a rate of development amendment (ROD amendment) to its zoning bylaws. The ROD amendment limits the rate of growth in the town by restricting the number of building permits that may be issued in any given year to a developer of lots held in common ownership, generally requiring development to be spread over a period of up to ten years.[2] As articulated by the town, the bylaw was adopted for the purposes of preserving the town's

---

[1] We acknowledge the amicus briefs submitted by the Massachusetts Municipal Association; the Massachusetts City Solicitors and Town Counsel Association; the Home Builders Association of Massachusetts, Inc., & others; and The Abstract Club and the Real Estate Bar Association.

[2] The relevant portions of the rate of development amendment (ROD amendment) provide:

"15.0.1. Building permits for the construction of dwellings on lots held in common ownership on the effective date of this provision shall not be granted at a rate per annum greater than as permitted by the following schedule . . . .

"15.1.1. For such lots containing a total area of land sufficient to provide more than ten dwellings at the maximum density permitted for the District in which such lots are located: one tenth of the number of dwellings permitted to be constructed or placed on said area of land based on said maximum permitted density.

"15.2.1. For such lots containing a total area of land insufficient to provide more than ten dwellings at the maximum density permitted under these Bylaws for the District in which such lots are located: one dwelling."

agricultural land and character, and providing for a "phasing-in" of population growth, thereby allowing time for the town to plan and to expand its public services, consistent with the fiscal constraints of Proposition 2 1/2, G. L. c. 59, § 21C.[3] The ROD amendment has been in effect for fifteen years. It is undisputed that the town intends the restriction to be of unlimited duration.[4]

Since adopting the ROD amendment in 1988, the town has undertaken various initiatives in response to the pressures imposed by the demands of growth. It has engaged in two planning exercises, the first culminating in 1989 with a growth management plan,[5] and the second in 1998 with an open space and recreation plan.[6,7] It has also appropriated funds to participate in the Commonwealth's agricultural preservation

[3]The preamble to the ROD amendment recites that the town is "dedicated to keep the distinction as the most agricultural community in the Commonwealth" and "operates entirely with a part[-]time staff of elected officials," that the town's existing school system is operating near capacity, that its fire department is comprised solely of volunteer fire fighters and its police department employs only three full-time officers, that fiscal constraints imposed by the requirements of Proposition 2 1/2, G. L. c. 59, § 21C, limit the town's ability "to correct the situations which could arise by a sudden increase in population," and that a "rate of development bylaw will allow the Town of Hadley to plan for any new or expanded services required by a population increase."

[4]The town highlights what in its view is the efficacy of the ROD amendment in slowing growth, noting that in 1987, the year before the amendment was adopted, the town issued fifty building permits, and that in the seven years following the amendment's adoption, that number was, on average, reduced by more than one-half.

[5]The growth management plan arose from an effort by the town "to revise and update the Hadley zoning bylaw to better achieve established community goals, such as protecting community character, preserving farmland and water resources, and strengthening the local tax base." It recommended, among other measures, development of a bylaw to address commercial site plan approval; modification of the table of permitted uses; general revision and reorganization of the zoning bylaws; consideration of mechanisms for the protection of farmland; expansion of affordable housing; and preservation of historic properties.

[6]The plan "expand[ed] . . . Hadley's previous land protection efforts to build a more comprehensive open space system," emphasizing "farmland protection[,] . . . conservation of historic resources[,] and development of new recreational opportunities." The plan specifically described five goals and objectives: protection of agricultural, natural, and historic resources; provision of recreational opportunities; and plan implementation. It also outlined a five-year schedule for its realization.

[7]In December, 1987, shortly before the adoption of the ROD amendment,

restriction program,[8] built a new elementary school and a public safety building, hired more full-time officials, and improved its water supply by purchasing land for aquifer protection and enhancing its water delivery system. The town has not, however, adopted many of the measures recommended in the studies that it undertook. It has not prepared or adopted a comprehensive land use plan or a community open space bylaw (as recommended in the 1998 study); it has not effected a major overhaul of its zoning bylaws (as recommended in the 1989 study); it has not adopted a cluster development bylaw (as recommended in the 1989 study), increased minimum lot sizes in agricultural districts to 80,000 square feet (as recommended in the 1987 study), or hired a full-time planner (also recommended in the 1987 study).[9]

Since 1986, the plaintiff, Martha Zuckerman (or her husband), has owned an approximately sixty-six acre parcel of land located in an agricultural-residential use district within the town. The zoning bylaw applicable to such districts permits, as of right, detached one-family dwellings, agriculture, and the raising of stock. Under the subdivision control law, G. L. c. 41,

the University of Massachusetts at Amherst completed a study for the town, entitled: A Preliminary Growth Management Study for Hadley, Massachusetts. Its principal recommendations were: reorganization of the town's planning process; modification of waterfront zoning rules; enhanced flood plain protection; protection of farmland through development of incentive districts, limited water and sewer service expansion, use of land trusts, and establishment of overlay districts; and revision of specified commercial and residential zoning rules to facilitate conservation.

[8]The agricultural preservation restriction program essentially buys deed restrictions to prevent farmland from being developed. See *Twomey* v. *Commissioner of Food & Agric.*, 435 Mass. 497 (2001). See also St. 2003, c. 26, §§ 62, 408 (repealing original legislation, codified at G. L. c. 132A, §§ 11A-11D [2002 ed.], and enacting substantially identical provisions, codified at G. L. c. 20, §§ 23-26). Pursuant to G. L. c. 40L, the town also has elected to designate "agricultural incentive areas," giving it a right of first refusal to purchase farmland that otherwise would be sold or converted for nonagricultural use. As the result of these efforts, the town in 1998 was second in the Commonwealth in the number of acres of protected farmland.

[9]The chairman of the Hadley planning board testified at his deposition that the town "should" develop and implement a comprehensive land use plan, "should" increase minimum lot sizes in agricultural districts to 80,000 square feet, and "should" adopt a community open space bylaw. He admitted, however, that fifteen years after the adoption of the ROD amendment, none of these had been effectuated.

§§ 81K-81GG, in effect in Hadley, Zuckerman's property could accommodate a large subdivision of approximately forty single-family homes. The ROD amendment, however, limits development of her property to four units a year for ten years. See note 2, *supra*.

Claiming that it is not economically feasible to sequence the development of her property over a ten-year period,[10] Zuckerman brought an action in the Land Court seeking a declaration that the ROD amendment was invalid and unconstitutional, or alternatively that it constituted a taking for which she must be compensated. The judge, ruling on cross motions for summary judgment, relied on *Sturges* v. *Chilmark*, 380 Mass. 246 (1980), in concluding that "time limitations on development must be temporary and must be dependent on the completion and implementation of comprehensive planning studies."[11] Finding that the ROD amendment created a restriction on development of unlimited duration and that the town had failed to implement many of the measures recommended in the planning studies, the judge held the ROD amendment unconstitutional and entered judgment for Zuckerman. The town appealed, and we transferred the appeal to this court on our own motion.

*Discussion.* As we observed in *Sturges* v. *Chilmark*, *supra* at 253, "[f]rom the wide scope of the purposes of The Zoning Act [G. L. c. 40A], it is apparent that the Legislature intended to permit cities and towns to adopt any and all zoning provisions which are constitutionally permissible," subject only to "limitations expressly stated in that act (see, e.g., G. L. c. 40A, § 3) or in other controlling legislation." Like the Land Court judge, we

---

[10]In response to interrogatories, Zuckerman stated that three developers informed her that, as a result of the bylaw, it was "not economically feasible" to develop the property, largely because the bylaw reduces the developers' flexibility and makes unavailable the economic advantages of large-scale development, thereby increasing the cost of development and reducing the marketability of the land.

[11]In *Sturges* v. *Chilmark*, 380 Mass. 246 (1980), the need for comprehensive planning studies was prompted by legitimate concerns over subsoil conditions that might affect water supplies and sewage disposal. In reaching its conclusion upholding the restrictions on development, the court noted that the bylaw furthered regional ("not simply local") concerns in preserving the unique and perishable qualities of the island of Martha's Vineyard, concerns that had been "articulated by the Legislature." *Id.* at 255-256.

find no statutory bar to the adoption of the ROD amendment, and hence move directly to the constitutional question. See *id.*

The classic recitation of the constitutional test is whether a zoning bylaw is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Euclid* v. *Ambler Realty Co.*, 272 U.S. 365, 395 (1926).[12] See *Sturges* v. *Chilmark, supra* at 256; *Sinn* v. *Selectmen of Acton*, 357 Mass. 606, 609 (1970); *Wilbur* v. *Newton*, 302 Mass. 38, 39 (1938). More specifically, due process requires that a zoning bylaw bear a rational relation to a legitimate zoning purpose. In our review, we make every presumption in favor of a zoning bylaw, and we measure its constitutional validity against any permissible public objective that the legislative body may plausibly be said to have been pursuing. *Sturges* v. *Chilmark, supra* at 256-257. "[I]f its reasonableness is fairly debatable, [a zoning bylaw] will be sustained." *Id.* at 256.

In the *Sturges* case, we upheld a restrictive rate of development zoning bylaw adopted by the town of Chilmark to control the rate of growth for a limited period to allow time for the town to carry out various planning studies and to implement various measures necessary to protect the water supply and to ensure proper sewage disposal.[13] *Id.* at 259-260. Hadley asks us to expand that holding to zoning bylaws intended to control growth for an unlimited duration to assist towns in better managing their fiscal resources and in preserving their character, in this case, agricultural.

---

[12]More recent Supreme Court cases have articulated the test somewhat differently, using the more familiar language of the rational relation standard. See, e.g., *Schad* v. *Mount Ephraim*, 452 U.S. 61, 68 (1981) ("Where property interests are adversely affected by zoning, the courts generally have emphasized the breadth of municipal power to control land use and have sustained the regulation if it is rationally related to legitimate state concerns . . ."); *Moore* v. *East Cleveland*, 431 U.S. 494, 498 & n.6 (1977) (plurality opinion) (requiring "rational relationship").

[13]In *Collura* v. *Arlington*, 367 Mass. 881 (1975), we upheld an interim zoning bylaw that prohibited construction of new apartment buildings in certain districts of a town for a two-year period while the town developed a comprehensive plan, indicating that "[i]nterim zoning can be considered a salutary device in the process of plotting a comprehensive zoning plan to be employed to prevent disruption of the ultimate plan itself." *Id.* at 886.

The town acknowledges that the purposes justifying the bylaw in Chilmark were short lived and specific, observes that the bylaw's relationship to those purposes depended on its temporary nature, but concludes that restraining the rate of development is a zoning tool available whenever, as in Chilmark, it bears an adequate relation to a legitimate purpose. So prefaced, the town argues that the pressures of growth justifying the ROD amendment in Hadley are indefinite in duration and substantial in their potential effect on the town's finances and character, and that the unlimited duration of the ROD amendment is therefore consistent with the purposes that motivated it. In essence, the town contends that, so long as the ROD amendment continues to limit growth over time, creating the buffer that the town considers necessary to absorb an increasing population while continuing to preserve those characteristics and to provide those public facilities that make Hadley a desirable place to live, the amendment is in the public interest and advances legitimate zoning purposes, and thus passes constitutional muster.

We recognize the enormous pressures faced by rural and suburban towns presented with demands of development, and that towns may seek to prevent or to curtail the visual blight and communal degradation that growth unencumbered by guidance or restraint may occasion. In this respect, however, Hadley is no different from other towns facing the pressures attendant to an influx of growth. Like all such towns, Hadley may, in an effort to preserve its character and natural resources, adopt any combination of zoning bylaws,[14] and participate in a wide variety of State-enacted programs,[15] that may, as a practical matter, limit growth by physically limiting the amount of land

[14]Within reason, such bylaws might include, for example, either large-lot or cluster zoning, expanded frontage requirements, the development of exclusive agricultural use districts, or any other measure permitted by statute. See generally, e.g., Comment, Preserving Our Heritage, 17 Pace L. Rev. 591, 619-623 (1997).

[15]For example, towns may seek the purchase of deed restrictions to prevent development of farmland, see G. L. c. 20, §§ 23-24, inserted by St. 2003, c. 26, § 62; elect to designate agricultural incentive areas and thereby gain a right of first refusal to purchase farmland that otherwise would be sold or converted to nonagricultural use, see G. L. c. 40L; accept the provisions of the Community Preservation Act, which allows communities to establish preserva-

available for development. Hadley may also slow the rate of its growth within reasonable time limits as we explained in *Sturges* v. *Chilmark, supra,* and *Collura* v. *Arlington,* 367 Mass. 881 (1975), to allow it to engage in planning and preparation for growth. What it may not do is adopt a zoning bylaw for the purpose of limiting the rate of growth for an indefinite or unlimited period.[16] Restraining the rate of growth for a period of unlimited duration, and not for the purpose of conducting studies or planning for future growth, is inherently and unavoidably detrimental to the public welfare, and therefore not a legitimate zoning purpose.[17]

Rate of development bylaws such as the one at issue here are

---

tion funds (and to tap a State matching fund) that they may use for open space protection, see G. L. c. 44B; and obtain zero-interest loans from the Commonwealth's Open Space Acquisition Revolving Fund to acquire land for open space, see G. L. c. 21, § 3E.

[16]The restraint in the *Sturges* case did not contain a specific time limitation, and had "the potential of limiting construction in the town over an indeterminate period." *Sturges* v. *Chilmark, supra* at 251 n.7. In that case we held that "a municipality may impose reasonable time limitations on development, *at least* where those restrictions are temporary" and adopted to assist the municipality to plan for growth (emphasis added). *Id.* at 252-253. Our holding in that case, and our holding today, should make clear that bylaws restraining growth pass constitutional muster only where they specifically contain time limitations or where it is abundantly clear that they are temporary, because they are enacted to assist a particular planning process. Where the needs of a town to plan for an aspect of growth prove to exceed the time limits of a bylaw, the town may extend the restriction for such limited time as is reasonably necessary to effect its specific purpose.

[17]In *Home Builders Ass'n of Cape Cod, Inc.* v. *Cape Cod Comm'n,* 441 Mass. 724 (2004) (*Home Builders Ass'n*), we upheld the town of Barnstable's adoption of a zoning ordinance that included a permanent building cap. We did so recognizing that the cap was adopted to protect a sole source aquifer, the integrity of which was an issue of regional importance, and that the cap was adopted through the Cape Cod regional commission, a body specifically established by the State Legislature in recognition of the "unique natural, coastal, scientific, historical, cultural, architectural, archaeological, recreational, and other values . . . threatened . . . by uncoordinated or inappropriate uses of the region's land and other resources." St. 1989, c. 716, § 1 (*a*). The purpose of the commission was to enable "the implementation of a regional land-use policy plan for all of Cape Cod, to recommend for designation [of] specific areas of Cape Cod as districts of critical planning concern, and to review and regulate developments of regional impact." St. 1989, c. 716, § 1 (*b*). See *Home Builders Ass'n, supra* at 729-730. The unusual circumstance that the entire town lay atop the aquifer, cf. *Prime* v. *Zoning Bd. of Appeals of Norwell,* 42 Mass. App. Ct. 796, 802 (1997) ("protection of an aquifer is a

restrictions not on how land ultimately may be used, but on when certain classes of property owners may use their land. Where classic zoning bylaws keep the pig out of the parlor, see *Euclid* v. *Ambler Realty Co.*, 272 U.S. 365, 388 (1926), rate of development bylaws tell the farmer how many new pigs may be in the barnyard each year. In their intent and in their effect, rate of development bylaws reallocate population growth from one town to another, and impose on other communities the increased burdens that one community seeks to avoid. Through zoning bylaws, a town may allow itself breathing room to plan for the channeling of normal growth; it may not turn that breathing room into a choke hold against further growth. *Simon* v. *Needham*, 311 Mass. 560, 565 (1942) ("zoning by-law cannot be adopted for the purpose of setting up a barrier against the influx of thrifty and respectable citizens who desire to live there and who are able and willing to erect homes upon lots upon which fair and reasonable restrictions have been imposed"). Despite the perceived benefits that enforced isolation may bring to a town facing a new wave of permanent home seekers, it does not serve the general welfare of the Commonwealth to permit one particular town to deflect that wave onto its neighbors. *Euclid* v. *Ambler Realty Co.*, *supra* at 390 (zoning regulation invalid "where the general public interest would so far outweigh the interest of the municipality that the municipality would not be allowed to stand in the way"). *Johnson* v. *Edgartown*, 425 Mass. 117, 120 (1997) (general welfare transcends one town's "parochial interests"). See *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 384 (1973). Accord *Associated Home Builders of the Greater Eastbay, Inc.* v. *Livermore*, 18 Cal. 3d 582, 607, 610-611 (1976) (requiring analysis of general welfare in light of all affected in

valid public interest"), and that the zoning ordinance permanently restricting development was adopted by a body established to address issues of region-wide concern, presented the unusual situation in which the permanent bylaw advanced the public welfare. See *Home Builders Ass'n, supra* at 735-738. Cf. *Sturges* v. *Chilmark*, 380 Mass. 246, 256 (1980) ("This expression of the public interest in the preservation of the qualities of Martha's Vineyard and the creation of a statutory commission to assist in that preservation are factors to be weighed . . . . The concerns . . . are regional and have been articulated by the Legislature").

region). As concisely stated by the Supreme Court of New Hampshire, "prevent[ing] the entrance of newcomers in order to avoid burdens upon the public services and facilities . . . is not a valid public purpose." *Beck* v. *Raymond*, 118 N.H. 793, 801 (1978).[18] Accord *National Land & Inv. Co.* v. *Easttown Bd. of Adjustment*, 419 Pa. 504, 532 (1965) ("zoning ordinance whose primary purpose is to prevent the entrance of newcomers in order to avoid future burdens, economic and otherwise, upon the administration of public services and facilities can not be held valid").

There is little doubt that the initial adoption of Hadley's ROD amendment appropriately sought to enable the town better to plan for growth and to adopt programs and other zoning measures to preserve its agricultural resources and character. But fifteen years have passed, and the town has had more than ample time to fulfil that legitimate purpose. Neither the desire for better fiscal management nor the revenue-raising limitations imposed by Proposition 2 $1/2$, G. L. c. 59, § 21C, is a proper basis on which to adopt a zoning ordinance intended to limit growth or the rate of growth in a particular town for the indefinite future.[19] See *122 Main St. Corp.* v. *Brockton*, 323 Mass. 646, 650 (1949) ("not within the scope of [zoning] to enact zoning regulations for the purpose of assisting a municipality . . . to inflate its taxable revenue"); *Simon* v. *Needham, supra* at 566 ("zoning by-law cannot be used primarily as a device to maintain a low tax rate"). Except when used to give communities breathing room for periods reasonably necessary for the purposes of growth planning generally, or resource problem solving specifically, as determined by the specific circumstances of each case, see *Sturges* v. *Chilmark, supra* at 257, such zoning ordinances do not serve a permissible

[18]The Supreme Court of New Hampshire continued to emphasize that growth controls adopted by cities and towns "should be the product of careful study and should be reexamined constantly with a view toward relaxing or ending them." *Beck* v. *Raymond*, 118 N.H. 793, 800 (1978).

[19]We are aware that *Giuliano* v. *Edgartown*, 531 F. Supp. 1076, 1082-1083 (D. Mass. 1982), and *Advanced Dev. Concepts, Inc.* v. *Blackstone*, 33 Mass. App. Ct. 228, 233 (1992), anticipated a contrary result.

public purpose, and are therefore unconstitutional.

The judgment of the Land Court is affirmed.[20]

*So ordered.*

---

[20]The Land Court judge ruling on cross motions for summary judgment did not reach the issue whether enforcement of the ROD amendment effected a taking of the plaintiff's property, and our decision today makes consideration of that claim unnecessary.