SUPERIOR COURT 
 
 FEDERAL STREET NEIGHBORHOOD ASSOCIATION & others[1] vs. F.W. WEBB COMPANY & others[2]

 
 Docket:
 1677CV01792-D
 
 
 Dates:
 February 13, 2020
 
 
 Present:
 /s/Jeffrey T. Karp Associate Justice, Superior Court
 
 
 County:
 ESSEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON F.W. WEBB COMPANY. SUN KING, LLC & BRIDGE STREET ASSOCIATES' MOTION FOR SUMMARY JUDGMENT (Paper No. 31) AND MUNICIPAL DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT (Paper No. 31.11)
 
 

 INTRODUCTION 
            This matter involves claims of alleged illegal rezoning of two lots located on Bridge Street in Salem, Massachusetts ("City") -- the "Webb Lot" located at 291-295 Bridge Street and the "Universal Lot" located at 297-305 Bridge Street (collectively, "Lots").
            Plaintiffs Federal Street Neighborhood Association, individual members thereof, and abutters to abutters to one of the two Lots (collectively, "Federal Street") claim that the City of Salem engaged in illegal "spot" and "contract" rezoning of the Lots in order to benefit defendants F.W. Webb Company ("F.W. Webb"), Sun King, LLC ("Sun King"), and Bridge Street Associates ("Bridge Street") (collectively, "Webb Defendants").
---------------------------
[1] Numerous individual owners of property located within the Federal Street neighborhood of Salem, MA, many of whom claim to be abutters to abutters to one of the two parcels of land at issue.
[2] Bridge Street Associates, Sun King, LLC, Mayor Kimberley Driscoll and various members of the Salem City Council.
                                                            Page 1 of 25
Federal Street also claim that defendants City of Salem Mayor Kimberley Driscoll ("Mayor") and various members of the Salem City Council (collectively, "Municipal Defendants") violated their rights to due process during the procedures that culminated in the rezoning of the Lots. Further, Federal Street contend that, in agreeing to sell the Universal Lot to F.W. Webb, the Municipal Defendants violated the Massachusetts Uniform Procurement Act ("Procurement Act") at G.L. c. 30B.
            Federal Street seek a judgment annulling the rezoning of the Lots and restoring the Lots to their former zoning designations, and a permanent injunction enjoining the Municipal Defendants from selling the Universal Lot to F.W. Webb.
            On October 8 and November 20, 2019, the parties were before the Court for argument on F.W. Webb Company, Sun King, LLC & Bridge Street Associates' Motion For Summary Judgment (Paper No. 31) ("Webb Motion") and Municipal Defendants' Response To Motion For Summary Judgment (Paper No. 31.11) ("City Motion").[3]
            As fully explained below, the Webb Motion and the City Motion are ALLOWED.
PROCEDURAL HISTORY 
            Given Federal Street's failure to comply with applicable rules and the ramifications thereof on the summary judgment record before the Court, discussion of the procedural history of this action is warranted.
---------------------------
[3] The Municipal Defendants did not file their own motion for summary judgment. However, they join in the Webb Motion's request for judgment as a matter of law, stating that: "there are no material facts in dispute in this action"; and, "for the reasons set forth in . . . [the Webb Motion] and papers filed in support thereof and incorporated therein, judgment should enter in this action in favor of the City[,] . . . dismissing . . . [Federal Street's] complaint in its entirety." Municipal Defs.' Resp. Mot. Summ. J., p. 1 (Paper No. 31.11). Thus, the Court will treat the City Motion as a motion for summary judgment pressing the same arguments made by the Webb Defendants.
                                                            Page 2 of 25
            On November 28, 2016, Federal Street filed the Complaint (Paper No. 1) against the defendants. The Complaint sets forth more than 374 separate paragraphs of allegations. In Counts I, III, V, VI, VII, and VIII, Federal Street assert, in one manner or another, that the rezoning of the Lots constituted illegal spot zoning and contract zoning. In Counts II and IV, Federal Street allege that their right to due process was violated during the procedures used by the Municipal Defendants in the rezoning of the Lots. Lastly, in Count IX of the Complaint, Federal Street contend that, in agreeing to sell the Universal Lot to F.W. Webb, the Municipal Defendants violated the Procurement Act and City ordinances.
            On March 16, 2018, Federal Street, the Webb Defendants, and the Municipal Defendants filed the Joint Motion To Extend Tracking Deadline(s) For Discovery, Service Of Rule 56, Filing Of Rule 56, And Final Pre-Trial Conference (Paper No. 20). On March 22, 2018, this Court (i.e., the undersigned judge) allowed the motion and extended the deadline for discovery until September 14, 2018 ("Discovery Deadline").
            On June 18, 2018, approximately three months prior to the Discovery Deadline, the Webb Defendants' counsel, James E. Gallagher ("Gallagher"), emailed Federal Street's counsel, John Carr ("Carr"), and requested an extension of the deadline for answering interrogatories. Gallagher stated that, in exchange for this accommodation, he was amendable to Carr filing a revised scheduling order requesting an enlargement of the Discovery Deadline.[4]
            Meanwhile, on September 4, 2018, Carr emailed the then-City of Salem city solicitor, Elizabeth Rennard ("Rennard"), requesting that she agree to extend the
---------------------------
[4] At the hearing on November 20, 2019, Gallagher acknowledged that the Webb Defendants did not submit answers to Federal Street's interrogatories until mid-January 2019.
                                                            Page 3 of 25
Discovery Deadline to December 31, 2018. Carr stated he would "prepare and send over a proposed joint motion to that effect." Rennard responded on the same day, stating she would "sign off on extending the tracking order" on behalf of the Municipal Defendants. However, the docket does not show that a joint motion/revised scheduling order was ever filed with the Court. Instead, on January 23, 2019, more than four months after the Discovery Deadline, Carr filed Federal Street Neighborhood Association's Motion To Amend The Tracking Order (Paper No. 24) ("January Motion To Amend"), which both the Webb Defendants and the Municipal Defendants opposed.
            On February 4, 2019, in response to the January Motion To Amend, the Court (Howe, J.) ordered Federal Street "to submit to the court and defendants a detailed list of proposed depositions and other discovery by February 11, 2019, and briefly describe the basis or need for the proposed deposition and any other discovery." (Endorsement Order, Paper No. 24). On March 4, 2019, with the permission of the Court (Lu, J.) to file late, Federal Street filed Plaintiffs' List Of Initial Depositions And Other Discovery (Paper No. 27) ("List Of Discovery"). Federal Street contend that the List Of Discovery complied with the Court's Order of February 4 to provide a "list of proposed depositions and other discovery" and to "briefly describe" the basis or need for the proposed discovery. This Court disagrees. Even reading the List Of Discovery with a generous eye in favor of Federal Street, this Court finds that, while it provided a list of proposed depositions and identifies other discovery Federal Street desired to conduct, the List Of Discovery failed to describe in any meaningful way why the proposed discovery is needed or what actions Federal Street took to obtain the information sought.
                                                           Page 4 of 25
            On May 3, 2019, following Federal Street's filing of the List Of Discovery, the Webb Defendants and the Municipal Defendants filed Defendants' Joint Motion To Establish Summary Judgment Tracking Order Deadline (Paper No. 28). This Court allowed the motion on May 8, 2019, and ordered motions for summary judgment served by June 7, 2019, and filed by July 12, 2019. (Endorsement Order, Paper No. 28).
            On July 26, 2019, the Webb Defendants filed the Webb Motion (Paper No. 31). Along with Plaintiffs' Opposition To Motion For Summary Judgment (Paper No. 31.4) and Plaintiffs' Memorandum In Support Of Plaintiffs' Opposition To Motion For Summary Judgment (Paper No. 31.5), Federal Street filed no less than four additional "motions," which this Court ruled were, in essence, additional oppositions to summary judgment. These additional "motions" include: (a) Plaintiffs' Statement Of Legal Elements And Issues (Paper No. 31.6); (b) Plaintiffs' Motion That Defendants F.W. Webb Company, Sun King, LLC & Bridge Street Associates Lack Standing To File Or Prosecute Their Motion For Summary Judgment (Paper No. 31.7); (c) Plaintiffs' Motion That Defendants F.W. Webb Company, Sun King, LLC & Bridge Street Associates' Motion For Summary Judgment Is Not Ripe For Consideration Because There Is No Real Controversy (Paper No. 31.8); and, (d) Plaintiffs' Motion That Defendants F.W. Webb Company, Sun King, LLC & Bridge Street Associates' Motion For Summary Judgment Is Not Ripe For Consideration Because The Plaintiffs Have Effectively Been Denied Discovery (Paper No. 31.9) ("Plaintiffs' Not Ripe Motion").
                                                            Page 5 of 25
            In addition, on August 9, 2019, separate from the previously filed Webb Motion "Rule 9A Package" (see Superior Court Rules 9A(b)(2) and 9A(b)(5)(iv)), Federal Street filed Plaintiffs' Partial Summary Of Material Disputes Of Fact (Paper No. 35) ("Plaintiffs' Disputes Of Fact").
            Prior to the summary judgment hearing on October 8, 2019, this Court issued rulings on a number of Federal Street's myriad summary judgment-related "motions." Most significant for current purposes, this Court treated Plaintiffs' Not Ripe Motion (Paper 31.9) as a motion for a stay under Mass. R. Civ. P. 56(f) of the summary judgment hearing so that Federal Street could conduct discovery. This Court denied the Plaintiffs' Not Ripe Motion without prejudice because Federal Street failed "to specify what facts germane to the issues raised in defendants' motion for summary judgment they seek to discover and what steps plaintiffs have taken to obtain the desired facts."[5] (Endorsement Order, Paper No. 31.9). Further, this Court "deemed admitted" the F.W. Webb Defendants' Statement Of Undisputed Material Fact In Support of Summary Judgment (Endorsement Order, Paper No. 31.2) due to Federal Street's failure to comply with Superior Court Rule 9A(b)(5)(iii)(A).[6] Finally, this Court struck Plaintiffs'
---------------------------
[5] See Alphas Co. v. Kilduff, 72 Mass. App. Ct. 104, 109 - 110 (2008) (Under Rule 56(f), "[t]he nonmoving party also 'must show to the best of his ability what facts are within the movant's exclusive knowledge or control; what steps have been taken to obtain the desired information pursuant to the discovery procedures under the Rules; and that he is desirous of taking advantage of these discovery procedures.'") (citation omitted).
[6] See Poon v. Mass. Inst. of Tech., 74 Mass. App. Ct. 185, 186 n.2 (2009) ("Noncompliance by a responding party [with Superior Court Rule 9A(b)(5)] will expose it to the risk of critical admissions.").
                                                            Page 6 of 25
Disputes Of Fact (Paper No. 35), due to Federal Street's failure to comply with Superior Court Rule 9A(b)(5)(iii)(B).[7]
            As stated, this Court heard argument on the Webb Motion on October 8 and November 20, 2019. During the November 20 hearing, this Court gave Federal Street another opportunity to argue the merits of Plaintiffs' Not Ripe Motion and requested Federal Street, again, identify specific depositions and other discovery that Federal Street needed to oppose the Webb Motion. Federal Street were not able to describe how the depositions and other discovery it sought would specifically assist it in opposing summary judgment, as required under Mass. R. Civ. P. 56(f). See Alphas Co., 72 Mass. App. Ct. at 109 — 110. Thus, Federal Street's request to stay action on the Webb Motion to conduct additional discovery under Rule 56(f) was denied with prejudice. (See Endorsement Order of November 20, 2019, Paper No. 31.9).[8]
FACTUAL BACKGROUND 
I.          The Subject Lots
            Bridge Street, an entity associated with F.W. Webb, owns the Webb Lot, which is located at 291-295 Bridge Street in Salem. F.W. Webb currently uses the Webb Lot to operate a plumbing supply warehouse and a plumbing retail store. F.W. Webb has operated from the building on the Webb Lot since the 1950s.
---------------------------
[7] See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 47 n.18 (2005) ("[Plaintiffs] opposition does not permit a judge to avoid 'ferreting' through the record to determine whether any material facts are in dispute -- precisely what rule 9A(b)(5) was promulgated to prevent.").
[8] Based on the above procedural history, in analyzing the Webb Motion, this Court relied on the Webb Defendants' Statement Of Undisputed Material Fact In Support of Summary Judgment (Paper No. 31.2) because, as stated, the facts therein are deemed admitted by Federal Street. Moreover, although this Court struck Plaintiffs' Disputes Of Fact (Paper No. 35), upon review of it, this Court finds that the statements contained therein do not constitute genuine issues of material fact which would warrant denial of the Webb Motion.
                                                            Page 7 of 25
            The City owns the Universal Lot, which is named for the defunct Universal Steel & Trading Company ("Universal Steel"). The Universal Lot is located at 297 - 305 Bridge Street in Salem, abuts the Webb Lot on its eastern border, and is approximately 1.21 acres.
            In 2012, the United States Department of Environmental Protection ("EPA") and the Massachusetts Department of Environmental Affairs ("MassDEP") conducted an environmental cleanup of the Universal Lot. As a result of the cleanup activities, the EPA and MassDEP assigned an activity use limitation ("AUL") to the Universal Lot, which prevents it from being used for residential purposes. Currently, the City uses the Universal Lot as a public parking lot.
II.        Zoning History
            On October 7, 2005, the City obtained title to the Universal Lot by virtue of a tax taking. The Instrument of Taking was recorded with the Essex County Registry of Deeds ("Essex Registry") on October 12, 2005, in Book 24937, Page 350.
            On December 12, 2005, the Salem City Council voted to establish the North River Canal Corridor Zoning District ("NRCC"). Following the creation of this new zoning district, the Webb Lot was rezoned to the NRCC. However, F.W. Webb's commercial/industrial use of the Webb Lot was a grandfathered use when the NRCC was created, and it remains a grandfathered use today. Prior to the enactment of the NRCC district, the Universal Lot was part of the Residential-2 ("R-2") zoning district. Enactment of the NRCC did not change the zoning district applicable to the Universal Lot, i.e., it remained part of the R-2 zoning district. The Universal Lot cannot be used for
                                                            Page 8 of 25
residential development because of the AUL designation, and it is not suitable for mixed use development.
            The City's Wholesale and Automotive B-4 zoning district allows more commercial uses than are allowed in the NRCC district.
            On April 15, 2010, the City filed a Complaint in the Land Court to foreclose on the Universal Lot pursuant to the Instrument of Taking. On June 7, 2012, the Land Court Complaint was recorded at the Essex Registry, in Book 31410, Page 401. On June 28, 2012, the City obtained a judgment of foreclosure from the Land Court and recorded it with the Essex Registry on July 11, 2012, in Book 31510, Page 68. No appeal of the judgment was taken.
            In January 2016, the Mayor proposed changing the zoning for the Webb and Universal Lots. Following this proposal, pursuant to a request from the Chairman of the Planning Board, Rennard issued a legal opinion ("Rennard Opinion"), concluding the proposed rezoning did not constitute "spot zoning." More specifically, Rennard concluded:
City officials have presented facts sufficient to support a finding by the City Council that the proposed rezoning promotes the public welfare, and is thus not spot zoning, because it allows commercial redevelopment in an old industrial area, conforms to the City's Master Plan, preserves and expands services from a company that has provided plumbing supplies to local contractors in the City for decades, increases the tax revenue through new growth on two underperforming lots historically used for commercial enterprises, creates additional jobs for area residents, retains existing jobs that are threatened, and properly zones a lot that has not been remediated for residential use and would otherwise remain vacant and underutilized.
Gallagher Aff., Ex. S, p. 3.
                                                            Page 9 of 25
            In 2016, the City Council and the Salem Planning Board ("Planning Board") held numerous meetings to discuss changing the zoning of the Lots from their then-current zoning districts to the B-4 zoning district. The potential zoning change of the Lots was discussed at: (a) City Council meetings held on January 6, 2016, February 4 and 23, 2016, March 9 and 30, 2016, April 14, 2016, July 21, 2016, October 13, 2016, and November 17, 2016; (b) joint meetings of the City Council and the Planning Board held on January 26, 2016, and September 19, 2016; and, (c) a Planning Board meeting held on September 27, 2016. Many of the plaintiffs spoke or provided written submissions during these numerous public hearings.[9]
            In May 2016, F.W. Webb submitted applications to the City for zoning relief in order to construct an addition to its current building on the Webb Lot. As part of this
---------------------------
[9] For example, (a) Carr, Jane Arlander, Jeremiah Jennings, Darrow Lebovici, Susan Weldon, and Constance Arlander spoke at the City Council meeting on February 4, 2016; (b) Lisa Spence, Meg Twohey, Barbara Cleary, David Hart, Tim Jenkins, Charles Von Bruns, Louis Siriani, Elizabeth Nugent, Justin Whittier, Darrow Lebovici, Steven Whittier, Victoria Siriani, Ann Whittier, and Jane Stauffer spoke at the City Council meeting on February 23, 2016; (c) Jane Stauffer, Jane Arlander, Frederick Biebesheimer, Louis Siriani, Meg Twohey, Ann Whittier, Carol Carr, Constance Arlander, David Hart, Barbara Cleary, Darrow Lebovici, Carr, Steven Whittier, and Susan Weldon spoke at the City Council meeting on March 9, 2016; (d) Lisa Spence, Jeremiah Jennings, Jane Arlander, David Hart, Elizabeth Nugent, Peter Nugent, Constance Arlander, Ian Cox, Charles Von Bruns, Frederick Biebesheimer, Steven Sass, Ellen Golub, Ann Whittier, Tim Jenkins, Louis Siriani, Victoria Siriani, Justin Whittier, Alexander Marks, Barbara Cleary, Linda Jenkins (reading a letter from Meg Twohey), Jane Stauffer, Ann Knight, David Whittier, Susan Weldon, David Hart (speaking for himself and reading a letter on behalf of Darrow Lebovici), and Carr (via letter) spoke at the City Council meeting on March 30, 2016; (e) Tim Jenkins, Carr, Louis Siriani, Justin Whittier, and Carol Carr spoke at the City Council meeting on April 14, 2016; (f) Carr, Justin Whittier, and Meg Twohey spoke at the City Council Meeting on July 21, 2016; (g) Carr spoke at the City Council meeting on October 13, 2016; (h) Meg Twohey spoke at the City Council meeting on November 17, 2016; (i) Carr, Darrow Lebovici, Meg Twohey, Carol Carr, Tim Jenkins, Linda Jenkins (presenting a letter from Barbara Cleary), Charles Von Bruns, Jeremiah Jennings, Elizabeth Nugent, Peter Nugent, Jane Stauffer, Justin Whittier, Lisa Spence, and Ann Whittier spoke at the joint meeting of the City Council and the Planning Board on January 26, 2016; and, (j) Barbara Cleary, Jane Arlander, Charles Von Bruns, Justin Whittier (then-President of Federal Street), Meg Twohey, Constance Arlander, Ann Whittier, and Carr spoke at the joint meeting of the City Council and Planning Board on September 19, 2016.
                                                            Page 10 of 25
proposed development, F.W. Webb planned to purchase the Universal Lot from the City and use the Universal Lot for parking, outside storage, and loading docks.
            On September 27, 2016, the Planning Board voted seven to zero to recommend changing the Webb Lot (then, part of the NRCC district) and Universal Lot (then, part of the R-2 district) from their existing zoning districts to the B-4 zoning district, which would allow for more commercial uses.
            On October 13, 2016, the City Council voted to change the Webb Lot and the Universal Lot to the B-4 zoning district. The process of rezoning the Lots was a public process governed and administered by the City Council, as is evidenced by the aforementioned numerous public hearings. Moreover, as stated, several of the plaintiffs and other members of the public participated in this process.
            On November 17, 2016, the City Council held its second (and final) vote and approved the change of the Webb Lot from the NRCC zoning district to the B-4 zoning district, and the change of the Universal Lot from the R-2 zoning district to the B-4 district.
III.       The Sale of the Universal Lot
            In late October and early November 2016, the City advertised the Universal Lot for sale via public auction. The public auction was conducted on November 14, 2016. F.W. Webb was the sole bidder at the auction. Its bid of $498,550.00 was the minimum required bid.
            Following the bid, Federal Street initiated various court actions in opposition to F.W. Webb's proposed development of the Lots, including: (a) this appeal of the rezoning enacted by the City Council; (b) appeal of a variance and special permit that
                                                            Page 11 of 25
the Salem Zoning Board of Appeals granted the Webb Defendants (Docket No. 1777CV00889-B); and, (c) appeal of a flood overlay special permit granted to the Webb Defendants by the Planning Board (Docket No. 1777CV01191-D).[10] While this litigation was pending, the Webb Defendants decided to pursue other options for the Webb Lot and opted not to purchase the Universal Lot from the City.
DISCUSSION
            The Webb Defendants assert various arguments in support of summary judgment. First, with respect to Counts I, III, V, VI, VII, and VIII, which allege, in some form or another, that the rezoning of the Lots constituted illegal spot zoning and contract zoning, the Webb Defendants argue the claims fail because: (1) the decision to rezone these Lots was an independent decision made by the City Council, after a favorable recommendation by the Planning Board; (2) they are not the only parties that will or could benefit from the rezoning; and, (3) the rezoning decision was made after careful deliberation with full participation from interested members of the public.
            Second, as to Counts ll and IV, which allege the plaintiffs were denied their rights to due process in connection with the process that resulted in the rezoning of the Lots, the Webb Defendants contend the claims fail because none of the plaintiffs were denied the right to be heard and the City complied with all requirements before voting to rezone the Lots.
---------------------------
[10] The latter two cases remain pending in various procedural postures.
                                                            Page 12 of 25
            Lastly, with respect to Count IX, which alleges the sale of the Universal violated the Procurement Act and City ordinances governing the disposition of public property, the Webb Defendants argue the claim fails because neither the Procurement Act nor the City ordinances apply to the sale of property obtained through a tax taking. The Court addresses these arguments below.
A. Summary Judgment Standard
            A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and responses to requests for admission under Rule 36, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56(c). "The moving party has the burden of demonstrating affirmatively the absence of a genuine issue of material fact on every relevant issue, regardless of who would have the burden on that issue at trial." Arcidi v. NAGE, Inc., 447 Mass. 616, 619 (2006).
            The party opposing summary judgment must respond and allege specific facts establishing the existence of a genuine issue of material fact for trial. Polaroid Corp. v.  Rollins Envtl. Servs. (N.J.), Inc., 416 Mass. 684, 696 (1993). Moreover, "[On deciding a motion for summary judgment, the motion judge must consider all factual allegations, and draw all reasonable inferences therefrom, in favor of the nonmoving party."
Godfrey v. Globe Newspaper Co., Inc., 457 Mass. 113, 119 (2010); see also Willitts v.  Roman Catholic Archbishop of Boston, 411 Mass. 202, 202 (1991) (any conflicts in the supporting materials are answered in favor of the non-movant). However, although the Court views the evidence in the light most favorable to the non-moving party, it does not
                                                            Page 13 of 25
weigh evidence, assess credibility, or find facts. Drakopoulos v. United States Bank  Nat'l Ass'n, 465 Mass. 775, 788 (2013) (quoting O'Connor v. Redstone, 452 Mass. 537, 550 (2008)).
            B. Spot Zoning
            As stated, Counts I, Ill, V, VI, and VIII of the Complaint make the same basic assertion -- that the rezoning of the Lots constituted illegal "spot" zoning.[11]
            "Spot zoning occurs 'where one lot or a small area has been singled out for treatment less onerous than that imposed upon nearby indistinguishable properties." W.R. Grace & Co.-Conn. v. Cambridge City Council, 56 Mass. App. Ct. 559, 569 (2002) (quoting Brobrowski, Massachusetts Land Use and Planning Law, § 3.4.4 (1993)); see also Lanner v. Board of Appeal, 348 Mass. 220, 229 (1964) (spot zoning is the "singling out of one lot for different treatment from that accorded to similar surrounding land indistinguishable from it in character, all for the economic benefit of the owner of that lot") (citation omitted) (original emphasis). Selective zoning of this type violates the uniformity requirements of G.L. c. 40A, § 4,[12] and the right to equal protection of the law
---------------------------
[11]The allegations in the Complaint are far from a model of clarity. However, the Court understands that, in Count I, Federal Street allege the rezoning of the Lots amounts to illegal spot zoning, which was "done solely to benefit. . . [the Webb Defendants] and to facilitate the sale of the Universal Lot to. . . [F.W. Webb]." Compl.,11275. In Count III, Federal Street contend that the conclusions contained within the Rennard Opinion (which opined the rezoning of the Lots did not constitute spot zoning) were "deficient and outdated[.]" Compl., ii 293. In Count V, Federal Street claim the Planning Board's vote to recommend rezoning the Lots was "arbitrary and capricious," given the "clear disconnect" between the comments certain members of the Board made at the meeting on September 27, 2016, and the Board's ultimate vote. Compl., 11324. In Count VI, the plaintiffs allege the rezoning of the Lots "amounts to illegal 'spot zoning,' as it constitutes "a singling out of. . . parcels . . . for the [sole] economic benefit of [F.W.] Webb." Compl., 111327, 329. In Count VIII, Federal Street contend there is "no substantial relation" between the rezoning of the Lots and the objectives outlined in the City of Salem Zoning Bylaw ("Salem Bylaw"). Compl.,] 366.
 
[12] "Any zoning ordinance or by-law which divides cities and towns into districts shall be uniform within the district for each class or kind of structures or uses permitted." G.L. c. 40A, § 4.
                                                            Page 14 of 25
guaranteed by the State and Federal Constitutions. Van Renselaar v. Springfield, 58 Mass. App. Ct. 104, 108 (2003) (quoting Rando v. North Attleborough, 44 Mass. App. Ct. 603, 606 (1998)). As for the impact of alleged spot zoning on the right to equal protection, "[t]he classic recitation of the constitutional test is whether a zoning bylaw is 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Zuckerman v. Town of Hadley, 442 Mass. 511, 516 (2004) (citations omitted).
            Whether a municipality's approval of a zoning change constitutes spot zoning "turns not on what parcel has been singled out, or even on the effect on the parcel, but rather on whether the change can fairly be said to be in furtherance of the purposes of the Zoning Act." W.R. Grace & Co.-Conn., 56 Mass. App. Ct. at 569; see also Bellis  Circle, Inc. v. Cambridge, 21 LCR 373, 374 (Mass. Land Ct. Jul. 15, 2013) (Foster, J.), affirmed by 86 Mass. App. Ct. 1105 (2014) (entering summary judgment in favor of municipality on claim for reverse spot zoning). Given "'the wide scope of the purposes of The Zoning Act, it is apparent that the Legislature intended to permit cities and towns to adopt any and all zoning provisions which are constitutionally permissible,' subject only to 'limitations expressly stated in that act (see, e.g., G. L. c. 40A, § 3) or in other controlling legislation." Zuckerman, 442 Mass. at 515 (citation omitted). Therefore, "every presumption is to be made in favor of the [zoning change] and its validity will be upheld unless it is shown beyond reasonable doubt that it conflicts with the enabling act." Van Renselaar, 58 Mass. App. Ct. at 108 (internal quotations and external citations omitted); see also Nimchick v. City Council of Chicopee, 96 Mass. App. Ct. 1110, 2019 WL 6278407, *2 (November 25, 2019) (Unpublished Rule 1:28) (same).
                                                            Page 15 of 25
            At bottom, a plaintiff seeking to challenge rezoning as spot zoning "has the heavy burden of showing that [the zoning change] conflicts with the [zoning] enabling act." Andrews v. Amherst, 68 Mass. App. Ct. 365, 369 (2007). The plaintiff must prove "by a preponderance of the evidence that the [zoning change] is arbitrary and unreasonable, or substantially unrelated to the public health, safety, morals, or general welfare." Johnson v. Edgartown, 425 Mass. 117, 121 (1997) (citing Sturges v. Chi[mark, 380 Mass. 246, 256 (1980)). "Put another way, the party challenging the [rezoning] has the burden of proving 'facts which compel a conclusion that the question [of] whether the [change] falls within the [scope of the] enabling statute is not even fairly debatable." Van Renselaar, 58 Mass. App. Ct. at 108 (quoting Crall v. Leominster, 362 Mass. 95, 103 (1972)). "If the reasonableness of [the zoning change] is fairly debateable, the judgment of the local legislative body. . . should be sustained and the reviewing court should not substitute its own judgment." Id. (quoting National Amusements, Inc. v.  Boston, 29 Mass. App. Ct. 305, 309 (1990)).
            Here, Section 1.1 of the Salem Bylaw identifies its "PURPOSE[.]" This provision states the Salem Bylaw is intended to:
[L]essen congestion in the streets; . . . preserve health; . . . secure safety from fire, panic and other dangers; . . . provide adequate light and air; . . . prevent overcrowding of land; . . . avoid undue concentration of population; . . . facilitate the adequate provisions of transportation, water, sewerage, schools, parks and other public requirements; . . . conserve the value of land and buildings; . . . encourage the most appropriate use of land throughout the City; and . . . . preserve and increase its amenities, to preserve and protect the water supply, open space and conservation of natural resources, to prevent the pollution of the environment and community blight, to ensure housing for all income levels and compliance with the master plan of the City of Salem[.]
Gallagher Aft, Ex. BB, Salem Bylaw, § 1.1.
                                                            Page 16 of 25
            The Webb Defendants argue the rezoning of the Lots comports with the above purposes because the rezoning: (1) "improve[s] the value of both the Webb Lot and the Universal Lot by providing more potential uses for the land"; (2) "encourages the most appropriate use of both the Webb Lot and the Universal Lot," as the Bridge Street corridor is, and always has been, a commercial area; (3) allows possible viable use of the Universal Lot, which cannot be used for residential or mixed development due to the AUL; (4) "helps the City preserve and increase its amenities by offering its residents and other businesses a useful commercial business space close to the city center"; and, (5) allows greater flexibility with respect to how the Lots are used, which will help prevent the spread of "blight" that has "encroached" upon the Bridge Street area. F.W. Webb Defendants' Mem. Supp. Mot. Summ. J., p. 7.
            While Federal Street may disagree with the Webb Defendants' assertions, the Court concludes that, at the very least, whether the rezoning of the Webb and Universal Lots meets the purposes outlined in the Salem Bylaw is "fairly debatable." Van Renselaar, 58 Mass. App. Ct. at 108. Although it appears the Webb Defendants benefited from the rezoning of the Lots, the general public also benefited.
            The zoning change increased the availability of commercial space in an area of the City that has historically been commercial. See Martin v. Rockland, 1 Mass. App. Ct. 167, 169 (1973) ("commercial development is a proper public goal that is appropriately achieved through zoning"). The rezoning resulted in more possible uses for the Universal Lot, which currently cannot be used for residential or mixed development because of the AUL, helping to prevent blight. The zoning change increased the amenities the City could offer its residents and other businesses by providing more
                                                            Page 17 of 25
commercial space close to the City center that could lead to more tax revenue for the City and more employment opportunities for its residents. See John Donnelly & Sons,  Inc. v. Outdoor Advertising Bd., 369 Mass. 206, 219 (1975) ("zoning regulations shall be designed to preserve and increase . . . amenities within a city or town") (quotations and citations omitted).
            Weighing "every presumption" in favor of the decision by the local municipal authorities, Van Renselaar, 58 Mass. App. Ct. at 108, the Court concludes Federal Street have failed to meet their "heavy burden" to show that the rezoning of the Lots conflicts with the Salem Bylaw or violates their right to equal protection. Andrews, 68 Mass. App. Ct. at 369.
            Thus, the Webb Motion and the City Motion are ALLOWED as to Counts I, III, V, VI, and VIII, alleging illegal spot zoning.
            C. Contract Zoning
            In Count VII of the Complaint, Federal Street allege that "[t]he B-4 rezoning of the Webb Lot and the Universal Lot amounts to a kind of illegal 'contract zoning." Compl., ¶342.
            "Illegal contract zoning is said to involve the process by which a local government enters into an agreement with a developer whereby the government extracts a performance or promise from the developer in exchange for its agreement to rezone the property'. . . [and]. . . 'is disapproved of largely on the basis of the principle that a municipality may not contract away its police power to regulate on behalf of the general welfare." Rando v. Town of N. Attleborough, 44 Mass. App. Ct. 603, 607 (1998) (citations omitted).
                                                            Page 18 of 25
            In Sylvania Elec. Prods., Inc. v. Newton, 344 Mass. 428, 434 (1962), the Supreme Judicial Court first mentioned "contract zoning," describing the concept as a process whereby a vote to rezone is expressly conditioned upon "extraneous considerations," such as a landowner's promise to use or not use his property in a certain manner. The Appeals Court discussed the concept further in McLean Hosp.  Corp. v. Belmont, 56 Mass. App. Ct. 540, 546-547 (2002); and Rando, 44 Mass. App. Ct. at 608 -609. Thereafter, however, in Durand v. IDC Bellingham, LLC, 440 Mass. 45 (2003), the SJC seemingly abandoned the concept of contract zoning as a means to challenge rezoning. In Durand, the SJC ruled there is "no persuasive authority for the proposition that an otherwise valid zoning enactment is invalid if it is in any way prompted or encouraged by a public benefit voluntarily offered." Id. at 57. The SJC "conclude[d] that the proper focus of review of a zoning enactment is whether it violates State law or constitutional provisions, is arbitrary or unreasonable, or is substantially unrelated to the public health, safety, or general welfare." Id. (citations omitted).
                        Given the holding in Durand, the Court believes that a challenge to rezoning premised upon the concept of contract zoning is no longer a viable claim.[13] But see Farrington v. City of Cambridge, 81 Mass. App. Ct. 1135, 2012 Mass. App. Unpub. LEXIS 620, *7 - 8 (May 14, 2012) (addressing the merits of plaintiffs' argument, inter alia, that the rezoning was illegal contract zoning; citing Durand and affirming entry of summary judgment on behalf of municipality).
---------------------------
[13] Ultimately, Durand seems to stand for the proposition that if a zoning change is valid on other grounds (i.e., the zoning change was enacted pursuant to the applicable zoning bylaw and the change serves a public purpose), then the mere existence of an agreement between the developer and the municipality will not invalidate the zoning change.
                                                            Page 19 of 25
            However, to the extent the concept of contract zoning challenges has not been abandoned after Durand, an individual challenging a zoning change on this basis faces a heavy burden. As stated, rezoning "will not normally be undone unless the plaintiff can demonstrate 'by a preponderance of the evidence that the zoning regulation is arbitrary and unreasonable, or substantially unrelated to the public health, safety . . . or general welfare." Durand, 440 Mass. at 51 (citations omitted). Applying this standard in the context of contract zoning "require[s] the court to consider whether the action was 'contrary to the best interest of the city and hence offensive to general public policy' and whether it involved extraneous considerations that 'could impeach the enacting vote as a decision solely in respect of rezoning the locus." Farrington, 2012 Mass. App. Unpub. LEXIS 620, *8 (quoting Sylvania Elec. Prods., Inc., 344 Mass. at 434).
            Here, there is no record evidence demonstrating that, prior to the vote to rezone the Lots, there was an actual agreement between the City and F.W. Webb whereby the Webb Defendants offered the City "extraneous" benefits in exchange for the rezoning that could give rise to a claim of contract zoning. Moreover, for many of the reasons mentioned above in the Court's discussion related to spot zoning, Federal Street have not shown that the rezoning of the Lots was contrary to the best interest of the City or undertaken solely because of benefits F.W. Webb allegedly offered that were unrelated to the development of the Lots. See Durand, 440 Mass. at 53 (upholding town's approval of rezoning despite contract zoning claim, where developer pledged $8 million to town if it rezoned land at issue, reasoning voters were not "bound to approve the zoning change"); McLean Hosp. Corp., 56 Mass. App. Ct. at 548 (finding town did not engage in contract zoning where, in exchange for zoning approval, developer agreed to:
                                                            Page 20 of 25
provide town with certain open space on rezoned property; protect certain historical features; provide affordable housing and recreational benefits; and, entered traffic management agreement, because such were "substantially related to the general welfare"); Rando, 44 Mass. App. Ct. at 605, 609 - 611 (holding no contract zoning had occurred where developer offered, in addition to payment, to provide town with "no build" buffer zone, traffic improvements, mitigation payments, and agreed not to seek tax abatements with respect to rezoned land for five years).
            For the reasons stated, the Webb Motion and the City Motion are ALLOWED as to Count VII of the Complaint, alleging contract zoning.
            D. Alleged Due Process Violations
            In Count ll and Count IV, Federal Street allege various due process violations in connection with the procedures used by the City to rezone the Lots.14 The Webb Defendants contend they are entitled to summary judgment on these claims because there is no record evidence demonstrating they failed to follow proper rezoning procedures in connection with the rezoning of the Lots, or that they or the Municipal Defendants violated any of the plaintiffs' due process rights by failing to allow Federal
---------------------------
[14] To the best of the Court's understanding, in Count II, Federal Street contend that "by demanding" the City Council "publicly vote" on the proposed rezoning before the joint hearing between the Planning Board and the City Council, and before the formal recommendation from the Planning Board, the Mayor and the Webb Defendants "made a public mockery and sham of the process by which land is zoned or rezoned[.]" Compl., ¶279. In addition, in Count II, Federal Street claim the Mayor and the City Council violated due process by insisting that the members of the City Council commit to voting for the rezoning. Compl., ¶282. In Count IV, Federal Street claim they were denied their procedural and substantive due process rights in connection with the joint public hearing between the City Council and the Planning Board on September 19, 2016, Compl., ¶¶296 - 297, and with respect to the Planning Board's meeting on September 27, 2016, Compl., ¶¶299 - 308.
                                                            Page 21 of 25
Street to participate in the rezoning process. The Court agrees with the Webb Defendants.
            General Laws c. 40A, § 5, "dictates the process a municipality must follow in amending its zoning bylaws." Durand, 440 Mass. at 52. In a city like Salem, such an amendment must be submitted to the city council, which, within fourteen days, must refer the amendment to the planning board for review. G.L. c. 40A, § 5, first para. Thereafter, the planning board has sixty-five days during which to hold a public hearing, with notice provided beforehand, at which members of the public can offer their views on the amendment. Id. § 5, second para. Once the hearing has been held, the planning board has twenty-one days to provide its recommendation to the city council. Id. § 5, fourth para. Thereafter, the city council "may adopt, reject, or amend and adopt any such proposed ordinance or bylaw." Id. The city council must, however, act within six months of the planning board hearing. Id. The zoning change or amendment will not be enacted unless it receives a two-thirds vote from all members of the city council. Id. § 5, fifth para.
            Here, Federal Street have presented no record evidence demonstrating the process required by section 5 was not properly followed or that its members were barred from fully engaging in this process. In early 2016, the Mayor first proposed rezoning the Webb and Universal Lots. Thereafter, as stated, this matter was discussed at nine City Council meetings during 2016, two joint meetings of the City Council and the Planning Board in 2016, and a Planning Board meeting on September 27, 2016. Numerous individuals, both proponents and opponents, including several of the plaintiffs
                                                            Page 22 of 25
and their present counsel, spoke or submitted written materials expressing their opinion regarding the proposed rezoning.
            The mere fact that Federal Street are unhappy with the outcome of the public process does not equate to a due process violation. The public process that resulted in the rezoning of the Lots was undertaken properly, with the full participation of all interested parties, including the plaintiffs themselves. "The constitutional requirements [when enacting zoning] are satisfied if adequate opportunity is given after the passage of such a by-law to contest its validity and its application to the property purporting to be affected by it." Lexington v. Bean, 272 Mass. 547, 551 (1930) (citations omitted). Those constitutional requirements were met here.[15]
            As such, the Webb Motion and the City Motion are ALLOWED as to Counts ll and IV, alleging due process violations.
---------------------------
[15] The Complaint, in passing, alleges that the rezoning procedure used by the City violated the plaintiffs' substantive due process rights. The Court doubts that the Complaint adequately asserts such a claim, see lannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (a claim may be properly dismissed under Rule 12(b)(6) when it fails to provide factual allegations sufficient to raise a right to relief above the "speculative level."); or, the plaintiffs' opposition to the Webb Motion adequately disputes entry of summary summary judgment on that claim. See Barron Chiropractic & Rehabilitation, P.C. v. Norfolk & Dedham Group, 469 Mass. 800, 812 (2014) ("a party opposing a motion for summary judgment may not 'simply rest on his pleadings.") (citation omitted); LaLonde v. Eissner, 405 Mass. 207, 209 (1989) (summary judgment granted where plaintiff failed to dispute any relevant material fact). Notwithstanding this, for the reasons stated above, the rezoning appears to be rationally related to a legitimate governmental interest. See, e.g., FraqoPoulos v. Rent Control Bd. Of Cambridge, 408 Mass. 302, 306 —307 (1990) ("Because the rent control ordinance 'does not burden a suspect class or a fundamental interest,' all the defendant city had to show was that the law was 'rationally related to a legitimate state interest,' not a compelling governmental interest, in order to meet the plaintiff's constitutional challenge under the equal protection clause of the Fourteenth Amendment.") (citations omitted).
                                                            Page 23 of 25
            E The Procurement Act
            In Count IX of the Complaint, Federal Street contend the process by which the City sold the Universal Lot to F.W. Webb violated the Procurement Act, G. L. c. 30B, and certain ordinances pertaining to the sale of property belonging to the City. The Webb Defendants argue this claims fails because the sale of the Universal Lot is not governed by the Procurement Act or the City of Salem Land Disposition Ordinance. In some respects, this claim is moot because F.W. Webb has decided not to follow through with purchasing the Universal Lot. Nevertheless, to the extent the claim presents a live controversy, the Court agrees with the Webb Defendants.
            The City obtained the Universal Lot via a tax taking. In connection with such property, G.L. c. 60, § 77B, states, in pertinent part, that: "The. . . city. . . may, notwithstanding any provision of law, ordinance or by-law inconsistent herewith, sell at public auction" any property acquired through tax lien foreclosure. This language is clear and unambiguous. Thus, regardless of any contrary provision in either the Procurement Act or the City of Salem's Land Disposition Ordinance, the City was lawfully entitled to sell the Universal Lot to F. W. Webb at public auction. See Commonwealth of Massachusetts Office of Inspector General, The Chapter 3013 Manual: Procuring Supplies, Services, and Real Property, p. 81-82 (Nov. 2016), http://www.mass.00vidownload-oiq-public-purchasing-and-public-construction-manuals  (last visited Feb. 6, 2020) (stating Procurement Act does not apply to "redemption or auction of tax title property authorized under the provisions of [G.L. c.] 60").
            As such, the Webb Motion and the City Motion are ALLOWED as to Count IX, alleging violations of the Procurement Act and City ordinances.
                                                            Page 24 of 25
ORDER
            For the reasons stated above, it is HEREBY ORDERED that:
            1. The F.W. Webb Company, Sun King, LLC & Bridge Street Associates' Motion For Summary Judgment (Paper No. 31) and the Municipal Defendants' Response To Motion For Summary Judgment (Paper No. 31.11) are ALLOWED as to all Counts of the Complaint.
            2. SUMMARY JUDGMENT OF DISMISSAL on all Counts of the Complaint SHALL ENTER and this matter stands DISMISSED.
/s/Jeffrey T. Karp Associate Justice, Superior Court
February 13, 2020
                                                            Page 25 of 25